Markover v. Krauss.

———————◆———————

No. 15,685.

MARKOVER v. KRAUSS.

ADOPTION.—*Husband and Wife Jointly Adopting.*—Husband and wife may jointly adopt a child.

SAME.—*Foreign Adoption.*—*Filing Record in this State.*—By filing in the courts of this State a certified copy of the adoption of a child in another State, the child is not thereby re-adopted ; and the child, without the presence or consent of the adopting husband and wife, may cause a record thereof to be made in any court of this State.

SAME.—*Effect of Filing Record.*—The effect of filing a certified copy of the record of the adoption of a child in another State simply enables the adopted child to enforce such rights as arise out of the original adoption ; and until there has been such a compliance with the statute the courts of this State will not recognize or enforce those rights.

SAME.—*Adult.*—*Adoption of.*—There is nothing to prevent the adoption of an adult.

SAME.—*Child Adopted by Husband and Former Wife.*—*Right of Childless Widow of Second Marriage as Against Such Child.*—A child jointly adopted during a former marriage by husband and wife, takes a fee simple in the real estate of the husband, subject to the life-estate of the childless widow by a second or other marriage, owned by the adopting father at any time during such subsequent marriage in the conveyance of which she has not joined with him. OLDS, J., and COFFEY, J., dissent.

DESCENT.—*Rights of Childless Widow by Second Marriage.*—*Life Estate.*—A childless widow by a second marriage, when children by a former marriage survive her, takes only a life-estate from her husband, and not a fee simple.

From the Washington Circuit Court.

*S. B. Voyles* and *J. H. Masterson,* for appellant.

*H. Morris,* for appellee.

McBRIDE, C. J.—From the complaint in this case we gather the following facts: One John G. M. Krauss, a resident of Washington county, died intestate, in the year 1889. At the time of his death he owned in fee simple certain land in that county, described in the complaint. He left surviving him a widow, Hannah Krauss, who had borne him no children. She, assuming to be the owner of the land in question, sold and conveyed it to the appellant, who is her son, and who, it is alleged, paid full value for it. The appellant entered into possession of the land, and is now, and has ever since been, in possession of it, claiming to be its owner by virtue of such purchase and conveyance. The decedent had been twice married before he intermarried with said Hannah, both of his other wives having died prior to his marriage to her. No child was ever born to him by any of his wives. In the year 1862, he resided in Huron county, Ohio, and was married. In October of that year, he, with his then wife, jointly applied to the probate court of that county to be permitted to adopt, as their joint heir, one Isaac Kuhn, and such steps were taken as resulted in his formal adoption as such heir by the name of Isaac Krauss. The heir thus adopted is the appellee herein. The wife, who joined in such adoption, died in 1863. She never had any interest whatever in the land in controversy, which was acquired after her death.

The appellant was the plaintiff below. His complaint is in two paragraphs. The first seeks to quiet his title to the land in controversy, and the second asks for the quieting of his title to the land, for the declaration and enforcement of a lien upon it, and for an accounting, with a general prayer for relief.

In the first paragraph the foregoing facts are all set out, and it is averred in addition that no transcript of the proceedings in the probate court of Huron county for the adoption of the appellee was ever brought into this State until after said John G. M. Krauss and his widow were both dead,

and the appellant was in possession and claiming ownership of the land, but that the appellee has recently filed such transcript in the clerk's office of Washington county, and has thereby created a cloud upon the appellant's title, and is himself asserting title to the land. Whether the transcript of the record of the adoption proceedings has, or has not, been entered upon the order-book of the Washington Circuit Court in open session, as required by section 829, R. S. 1881, is not shown by the complaint.

The appellant's counsel, in argument, contend that, under section 829, above cited, a child adopted in another State acquires no rights enforceable in this State, unless all the parties to the adoption appear in the circuit court of some county in this State, during the minority of the child, file the record of the adoption and cause its entry upon the order-book in open session of such court, and that after the death of either the adoptive father or mother, or the majority of the adopted child, it was too late, and the adopted child could not thereafter acquire nor enforce any rights by virtue of such adoption ; that if this is not true, the adopted child does not stand upon the same footing as a natural child, or a child born to the adoptive father, and that, as against such adopted child the widow, even if a second wife and childless, will take absolutely all of her deceased husband's property.

Section 829, R. S. 1881, provides that, when a child is legally adopted in any State of the United States other than this State, in accordance with the laws of that State, and a transcript of the record of such adoption is filed and entered upon the order book of any circuit court in this State, such adoption shall thereafter have the same force and effect, and such adopted child shall have the same rights as if the original adoption had occurred in this State and pursuant to its laws. Compliance with section 829 simply enables the adopted child to enforce such rights as arise out of the original adoption, and, until there has been such compliance, the

courts of this State will not recognize or enforce those rights. The act of compliance with the requirements of that section is in no sense a re-adoption of the child, as argued by counsel, and there is no reason why either the adoptive parents or the adopted child should at the same time appear in person in the court where such record is filed, or is ordered spread upon the order book. Such appearance is, in our opinion, not necessary. Nor is it necessary that such record be filed during the lifetime of the adoptive parents or during the minority of the adopted child. Counsel argue that because in the statute providing for the adoption of heirs the word " child " is used, the proceeding can only apply to infants; that an adult is no longer a child, and hence cannot be adopted, and, the same word being used in providing for the filing in the courts of this State of the evidence of a foreign adoption, such evidence must of necessity be filed while the adopted heir is still a " child," *i. e.*, still an infant. It is true that the word "child" is used throughout the entire statute, including section 829. It is also true that the word child, as commonly used, carries with it the idea of tender years and of minority. It is, however, also true that one's child does not cease to be his child when it attains its majority. The statute, unlike the statutes of many of the States, contains no provision fixing or limiting the age at which heirs may be adopted. We can see no reason why its provisions may not apply to adults equally with infants. We think they may, and do, and that the record of the foreign adoption filed after the adopted child has attained his majority is equally effective as if filed before that time.

The complaint showing, as it does, the actual adoption of the appellee, and his rights as such adopted child arising, as we have said, out of the act of adoption, and not out of the filing and entry of the record of adoption on the order book of the Washington Circuit Court, it is not material that it does not appear from the averments of the complaint whether the record has been heretofore entered upon the order book

in open session or not.   If not yet made, it is his right, under the statute, to have it made at any time.   If, as such adopted child, he has any interest in the land which might be enforced after the filing of such record and its entry upon the order book, the appellant can not quiet his title as against such interest.

If the appellee, instead of being the adopted child of John G. M. and Barbara Krauss, the first wife, had been their natural child, born to said John G. M. by said Barbara, it is conceded that neither the widow Hannah nor her grantee could hold the land as against him.   As a childless second wife she would, under the proviso to section 1 of the act of March 11th, 1889, section 423, Elliott's Supplement, have taken in the land only a life-estate, and the fee would, at the death of the husband, have vested in the appellee.   That proviso reads as follows :

"*Provided,* That if a man marry a second or subsequent wife and has by her no children, but has children alive by a former wife, the interest of such second or subsequent childess wife in the lands of the decedent shall only be a life-estate, and the fee of the same shall, at the death of such husband vest in such children, subject only to the life-estate of such widow."   The appellant insists that this proviso has no application whatever to an adopted child, but applies only to such children as have been *born* to the party by a former wife. This they insist is the only reasonable interpretation that can be given to the expression, " children by a former wife."

The question thus presented is an interesting one, and not free from difficulty.   Its solution requires an inquiry into the status of adopted children, and the relative rights of such children and of natural children.   In such an inquiry we can get no light from the common law, as that law made no provision for the adoption of heirs.

The law of adoption comes to us from the Roman law, and its appearance in our system of jurisprudence is in the

nature of an engrafting of certain principles of that law rather than a statutory creation.

Our statute for the adoption of heirs provides that, " From and after the adoption of such child it shall take the name in which it is adopted and be entitled to and receive all the rights and interests in the estate of such adopting father or mother, by descent or otherwise, that such child would if the natural heir of such adopting father or mother." Section 29, Elliott's Supp., Acts 1883, p. 61.

It further provides that, "After the adoption of such child, such adoptive father or mother shall occupy the same position toward such child that he or she would if the natural father or mother, and be liable for the maintenance, education, and every other way responsible as a natural father or mother." Section 826, R. S. 1881.

Our task requires us to construe the foregoing statutory provisions relating to the adoption of heirs, and the rights thereby secured to the adopted child in connection with the statute fixing the rights of a second or subsequent childless wife in her husband's property. We approach this task in the light of the rule of construction, which requires us to view the whole body of our laws, statutory and otherwise, as together constituting a harmonious whole, each part and provision consistent with every other part. And that it is our duty to reconcile and harmonize, rather than to discover and emphasize apparent inconsistencies. Sutherland Statutory Construction, sections 287–289 ; *Merritt* v. *Gibson,* 129 Ind. 155 (173).

Many of the States have engrafted into their system of laws provisions for the adoption of heirs. There is, however, but little, if any, uniformity in the various statutory provisions, and a study of the several statutes, with the constructions given them by the courts, gives us but little light on the point of difficulty.

While the precise question involved has never heretofore been before this court, the general subject of the relations

existing between natural and adopted children, with the nature and extent of the estate which they inherit from their adoptive parents, has several times been fully considered. See *Humphries* v. *Davis*, 100 Ind. 274; *Krug* v. *Davis*, 87 Ind. 590; *Davis* v. *Krug*, 95 Ind. 1; *Humphries* v. *Davis*, 100 Ind. 369; *Paul* v. *Davis*, 100 Ind. 422; *Isenhour* v. *Isenhour*, 52 Ind. 328, and many other cases.

A discussion of the question that is especially full, interesting and instructive will be found in the case first above cited. In that case the court fully recognizes the civil law as the source to which we must look for authority, upon the ground that the power thus given one to name a person not of his blood to be the lawful inheritor of his property if he dies intestate, is in the nature of a legislative enactment of certain provisions of the Roman law. As is there said: "It is established law that where a rule is borrowed from another body of laws, courts will look to the source from which it emanated to ascertain its effect and force."

Turning then to the Roman law we read: "He who is either adopted or arrogated is assimilated in many points to a son born in lawful matrimony." Institutes of Gaius, book 1, section 105, Sandars' Justinian, 45.

"Adoptive children, so long as they are held in adoption, are in the position of children born to us." Institutes of Gaius, book 2, section 136, Hunter's Roman Law, p. 58.

While Justinian revised, and in many respects changed the law relating to the adoption of heirs, it will be found that the changes made by him were in the nature of an enlargement instead of a diminution of the rights of the adopted child. For instance, originally, the adopted child, on adoption, lost all rights in the family of his natural parents. He was no longer in any legal sense related to them, and had no interest whatever in their estate. If thereafter his adoptive father emancipated him, he was without a family, having no legal right in either the family of his natural or his adoptive father. One of the changes made by Justinian was

to remedy this injustice. Hunter's Roman Law, 63. After his revision, as before, the adopted child, while held in the bonds of adoption, was still in the position of a natural child, or a child born to the adopting father. Not, as is said in *Humphries* v. *Davis, supra,* that the law contemplated to do the work of nature and create a child of one's blood out of a stranger, but, that the law could, and did make the legal status of the one in every respect that of the other. Thus, the son of the adopted son was by the law made the grandson of the adopting father, with all the legal rights incident to that relation.

.Louisiana is the only one of the United States in which the civil law ever prevailed, it having been in force there until 1808. In the case of *Vidal* v. *Commagere,* 13 La. Ann. 516, the Supreme Court of that State was required to construe a special act of the Legislature authorizing certain persons to "adopt" a young orphan child. The act in no manner defined the nature or extent of the rights thus intended to be conferred upon the adopted child.

The court first traces the origin of adoption and its nature and effects as known to the civil law, and then says: "Words having a well known signification in the sources of our jurisprudence ought to be considered as used in that sense when embodied in a statute. As has already been remarked, the former laws of Louisiana authorized adoption, and the rights conferred by those laws are known to our courts. * * * The lawgiver ought not to be supposed ignorant of this state of things, or to use a term in a more restricted sense than it was formerly known to our laws. * * * We conclude, therefore, that, as by the common acceptation of the word ' adoption,' the relationship of parent and child, with all the consequences of that relationship, is understood, as such was the legal meaning of the word under the former laws of Louisiana, and as such is its acceptation among civilians and those conversant with the sources of our laws, we can not say that the Legislature used the word in a more restrained sense; in a

sense not understood in common parlance, not given in any dictionary, and not known in any system of laws. As by the former laws of Louisiana, the person adopted bore the relation of child to the person adopting, and inherited his estate, so we think the Legislature, by the solemn expression of its will, intended to confer the same right upon the plaintiff to the estate of those who were authorized to adopt her."

The language of our statute is plain and emphatic, declaring that after adoption the adopted child "*shall be entitled to and receive all the rights and interests in the estate of such adopting father or mother, by descent or otherwise, that such child would if the natural heir of such adopting* father or mother."

It authorizes a joint adoption by both husband and wife.

Viewing this statute in the light of the civil law, it seems clear to us that the legislative intention was to give to adopted children the same relation to adopted parents that was given them by the civil law; that, in so far as property rights are concerned, it was the intention to give to them the same rights as if they were their natural children, or children of their blood ; and, when the adoption is joint, that they should, as to all property rights, be, in the eyes of the law, *children of the adoptive father by the adoptive mother.*

As before suggested, we do not mean by this that the Legislature has attempted to perform the impossible feat of doing the work of nature, and of creating a child of one's blood out of a stranger. We simply recognize and acknowledge the untrammeled power of the Legislature to fix the legal status of the respective parties, and to control absolutely the manner in which property shall descend and be distributed.

True there seems at first blush to be force in the suggestion that the statute which gives to the childless second wife only a life-estate in the lands of her deceased husband as against children living by a former wife, being an exclusion of such childless second wife from the full estate of a first.

wife, or of a wife with living children, should receive a construction most favorable to the widow, and that the legislative purpose was simply to discriminate between those of the blood of the intestate and strangers to that blood; that to permit the exclusion in favor of adopted children, while it would prevent the alien heirs of the childless wife from taking, would, in giving it to the adopted children, give it to those of equally alien blood. If the question could be viewed simply as affecting the relative rights of the childless wife and the adopted children, there would be great force in this suggestion, although not as great now as prior to the enactment of section 423, *supra*.

Prior to that time the childless second, or subsequent wife, took a limited fee, and the children living took from her, at her death, as her forced heirs.

Now, on the death of the husband, by the provisions of that statute, the fee at once vests in the living children by the former marriage, and the childless second wife takes a mere life-estate. A little thought will show that it is not so much a question between the childless second wife and the adopted child as it is a question between the natural and adopted children. If the children living are all natural children, it will be conceded that they take the entire fee, subject to a life-estate in one-third, which goes to the widow.

If, however, they are all adopted children, under the construction contended for by the appellant, the widow will take one-third in fee, thus excluding them from all participation in that portion of the estate. The effect of such a construction would be to discriminate in favor of natural and against adopted children, and, in the face of the plain, unequivocal language of the statute, and of the established rules of the civil law, to deny to adopted children the equal rights said to be theirs by virtue of their adoption.

The discrimination and inequality which would result from such a construction of the statute would be still more marked if the party left surviving him both natural and

adopted children. In such a case the widow would, of course, because of the natural children, take only a life-estate in one-third of the land, the remainder in which would vest in the natural, to the entire exclusion of the adopted children. The effect of such a construction would be to nullify the provisions of section 29, Elliott's Supplement, *supra*, in so far as relates to all cases of this character. It is not possible, by any construction other than that herein adopted, to give full effect to all of the provisions of the statute. The construction we have adopted does this, and not only harmonizes all of the various statutory provisions but is also in harmony with the rules laid down by the civilians concerning the effect of adoption.

The case of *Davis* v. *Fogle*, 124 Ind. 41, is cited as in conflict with the view adopted by us in this case. An examination of that opinion will show that no question involved in this case was then before the court. That case required the construction of section 2560, R. S. 1881, which provides that, " If, after the making of a will, the testator shall have born to him legitimate issue, who shall survive him, or shall have posthumous issue, then such will shall be deemed revoked, unless provision shall have been made in such will for such issue."

The court correctly decided that the adoption of a child was not having a child " *born to* " the maker of the will. Only the *birth* of a child can have the effect of revoking a will.

Any language used in the opinion seeming to decide the question now presented is outside of the issue then before the court, and can not be regarded as authoritative.

It is impossible to determine from the averments of the second paragraph of the complaint upon what theory it was constructed, while the relief asked is inconsistent and contradictory. In addition to a general prayer for relief, there is, as we have said, a prayer that the appellant's title be quieted, a prayer for the declaration and enforcement of a

lien, and a prayer for an accounting. Counsel for the appellant, in their brief, also inform us that it is "in the nature of a partition." This is possible. If, however, they mean by this that it is in the nature of a suit for partition, we are unable to discover in its averments anything giving to it that character.

It is a settled rule of pleading and practice in this State that a complaint must proceed upon some definite theory, and that it must be good on the theory adopted. *Moorman* v. *Wood,* 117 Ind. 144 (147); *Manifold* v. *Jones,* 117 Ind. 212 (217); *Feder* v. *Field,* 117 Ind. 386 (391); *Mescall* v. *Tully,* 91 Ind. 96 (99), and many other cases. Unless it is good upon such definite theory it is not good at all.

It is unnecessary to quote the pleading. It is sufficient to say that the only thing that seems to be clear about it is that the pleader was unwilling in drawing it to commit himself to any definite theory. This court can not construct a theory for him. If it could, we can conceive of no theory upon which its averments are sufficient to constitute a good cause of action.

The court did not err in sustaining the demurrer to it. We find no error in the record.

Judgment affirmed, with costs.

Filed October 5, 1892.

## DISSENTING OPINION.

OLDS, J.—I am unable to concur in the opinion of the majority of the judges in this case. As appears from the facts John Krauss, the owner of the land, died intestate in 1889; that at the time of his death he was, and for fifteen years next prior thereto he had been, an inhabitant and resident of Indiana; that he left surviving him Hannah Krauss, his widow; that he had by her no children, and he had born to him no children by any former wife; that during the lifetime of a former wife, and while they resided in the State of

Ohio, and before he became the owner of the land in dispute in this case, he and his first wife, by proceedings in the probate court of Huron county, Ohio, duly adopted the appellee as their child. After such adoption his first wife died, and John Krauss afterwards remarried to Hanna Krauss, and became the owner of the land in question; that after said John Krauss died his widow sold the land to the appellant, the appellant paid for the same, and the widow conveyed the land to him; that after the appellant had purchased and paid for the land, and received a conveyance for the same, and the widow had died, the appellee filed, in the clerk's office of the Washington Circuit Court, a transcript of the record of his adoption by John Krauss and his first wife, in the probate court of Huron county, Ohio, and is thereby claiming the land and disputing the appellant's title.

It is averred that John Krauss died in 1889, whether before or after the amendment of section 2487, R. S. 1881, does not appear, and is immaterial.

In my opinion some of the sections of our statute recognize a difference between a natural and adopted child, and admitting for the purpose of the decision of the other question, that the proceedings in the filing of the transcript of the record of adoption in the clerk's office of the Washington Circuit Court were regular and in due time, and gave to the appellee all the rights he could have by any possibility acquired by a strict compliance with the provisions of section 829, R. S. 1881, I can not agree that the widow took only a life-estate in the land, or that at her death it descended to the adopted son. It is the theory of our law of descent that the widow of a decedent shall be liberally provided for. Dower has been abolished, and a fee simple in one-third, and in some instances even a more liberal allowance, is given in its stead. Section 2490, R. S. 1881; gives to the surviving husband or wife the whole of the intestate's estate, real and personal, in case such intestate leaves no child and no father or mother surviving. Section 2486 gives to

the widow one-half of the estate of the husband in case he die intestate, leaving but one child. In the case at bar, if either section 2486 or 2490 govern, the widow would take one-half of the whole, and they must and do control unless the inheritance is governed by some other section or sections of the statute inconsistent therewith. The proviso to section 2487 declares that " if a man marry a second or other subsequent wife and has by her no children, but has children alive by a previous wife, the land which, at his death, descends to such wife, shall, at her death, descend to his children." This section is amended by the act of 1889, Elliott's Sup., section 423, to limit the wife's inheritance in such case to a life-estate. The widow in the case at bar being dead at the time suit was brought, if either provision is applicable the adopted son would be the owner in fee at that time. I can not agree to such an interpretation of the statute. In my judgment section 2487, *supra,* and the amended section 423 relate to and apply only when there are natural children born to the husband by a former wife, who survives him. This section has no relation to adopted children or their inheritance. It simply puts a limit on the amount taken by a second or subsequent wife, and is intended to limit such estate to be taken by her only in case the husband leaves surviving him a child or children by a previous wife.

A child by adoption is not a child by a wife. A child by adoption is made the child of the adopting parent, or parents, by legal proceedings—by operation of law.

It is suggested that the adopted child is, by section 825, made to stand in the attitude, having all the rights of a natural child. This section provides that " It shall take the name in which it is adopted, and be entitled to and receive all rights and interest in the estate of such adopted father or mother, by descent or otherwise, that such child would do if the natural heir of such adopted father or mother," and it is contended that to hold that it does not take the whole estate in preference to a widow who is a second or subsequent

wife, nullifies the provisions of this section, but with this we can not concur. Full force and effect may be given to this section by a construction of the statute simply holding that he is the child of his adopting father, but not a child born of a wife, or what is equivalent, a child by a previous wife. If the statute be so construed as to hold that he is the child of the deceased husband, then he takes one-half of the estate, for section 2486, *supra*, provides: "If a husband die intestate, leaving a widow and one child only, his real estate shall descend one-half to his widow and one-half to his child," and such a construction is entirely consistent with section 2490, which declares the surviving husband or wife shall take the whole of the estate when no child and no father or mother survive. Such a construction gives full force to the statute authorizing the adoption of children, but to hold that the adopted son is a child by a wife is, in my judgment, absolutely inconsistent with the language used in the statute, and likewise inconsistent and contrary to the will of the Legislature.

The sections of the statute of descents dividing the estate of an intestate between the widow and children make no distinction between the natural and adopted children in case there is but one child of the husband. Whether that child be natural or adopted the widow and the child each take one-half; if there be more than one child the widow takes one-third, but section 2487, and the sections amendatory thereof, which limits the widow's interest in certain cases to a mere life-estate, expressly provide that such limitation shall only take place where the husband has children alive by a previous wife, clearly expressing the intention that such limitation should not take place except there were natural children born of a former wife. If the intention had been as interpreted by the majority opinion, it would have been fully expressed by the omission of the words "by a previous wife," leaving the section to read, " that if a man marry a second or other subsequent wife, and has by her no

children, but has children alive, the land which at his death descends to such wife shall at her death descend to his children. It is clear to my mind that the words " by a previous wife " were inserted in the statute for a purpose, and as clearly expressing the legislative intention that the wife's estate should only be limited in case there were natural children born to the husband by a previous wife, and certainly there are no reasons for placing an unnatural or forced construction on the statute favorable to an adopted child as against the second or subsequent wife.

Conceding, without expressing an opinion, that the proceedings in the matter of adoption are regular, in my opinion the widow and the adopted child each took one-half of the land in fee, and the judgment should be reversed on the ruling of the court in sustaining the demurrer to each paragraph of the complaint.

DISSENTING OPINION.

COFFEY, J.—I can not concur in the conclusion reached in this case. By no course of legitimate reasoning can the conclusion be reached that a child by adoption is a child by a former wife.

