# LILLIE HOCKADAY, Appellant, v. CICERO LYNN et al.

### Division One, December 22, 1906.

1. **ADOPTED CHILD: Right to Inherit from Collateral Kindred of Parent.** An adopted child does not, by reason of such adoption, become an heir to the real estate of a brother of her adopting parent who dies, intestate and without decendants, after the death of the adopting parent. The adoption makes her an heir only to the property of the adopting parent, and does not make her an heir by representation to the property which might have come to her adopting parent had such parent survived his bachelor brother.

2. ————: ————: **Statutes: Restricted to Adopting Parent.** The effect of the adoption of a child is, by the Statute of Adoption, restricted to the adopting parent. The adopted child does not become the child of the married woman by the adoption of her husband, but to become her child the adoption must be joined in by her. For a stronger reason the adopted child does not become an heir of collateral kindred of the adopting parent.

3. ————: ————: ————: **Construction: Consanguinty.** Statutes of adoption have always been construed more or less strictly against the adopted child, except that strict construction is not extended to the act of adoption itself. But when the right of such child to inherit is in issue they will be so construed. And in the Statute of Descents and Distributions the idea of blood kinship is sharply accentuated by the use of such words as "kindred," whose primary legal meaning is "relatives by blood." Consanguinity is so fundamental in those statutes that it can be ignored only when courts are forced to do so, either by the express terms of the statute, or by inexorable implication.

4. ————: ————: **Inheritance: From Whom.** If one inherit a share in an estate which his deceased father would have inherited, he inherits not from the father, but directly from the intestate. Therefore, the adopted child does not inherit from the brother of the adopting parent, since she is not of the brother's kindred, but an alien to his blood, and her adoption was brought about by a contract between others.

Appeal from Cass Circuit Court.—*Hon. H. C. Timmonds*, Special Judge.

AFFIRMED.

*Chas. W. Sloan* and *R. T. Railey* for appellant.

(1) Plaintiff was the legally adopted child of James Lynn, deceased, and as such was entitled to inherit as if born to him in lawful wedlock—or just as a child by blood. Lynn v. Hockaday, 162 Mo. 111; secs. 968, 970, R. S. 1889; sec. 5248, R. S. 1899; Fosburgh v. Rogers, 114 Mo. 133; Moran v. Stewart, 122 Mo. 295, 132 Mo. 73; In Re Estate Moran, 151 Mo. 557; Warren v. Prescott, 24 Atl. 948, 84 Me. 483; Ross v. Ross, 129 Mass. 243; Gray v. Holmes, 57 Kan. 217; Power v. Hafley, 85 Ky. 671; Stearns v. Allen, 183 Mass. 404; Humphries v. Davis, 100 Ind. 280; Wagner v. Warner, 50 Iowa 532; Burrage v. Briggs, 120 Mass. 103; Glascock v. Bragg, 87 N. W. 853; Parsons v. Same, 101 Wis. 76. (2) Plaintiff having been adopted as a "child and heir at law of James Lynn, deceased," she became entitled to all the rights flowing from the relation of parent and child. Lynn v. Hockaday, 162 Mo. 127. (3) An heir at law is to be construed interchangeably with the words "children," "grand children," "descendants," or "issue." Waddell v. Waddell, 99 Mo. 345; Maguire v. Moore, 108 Mo. 267; Flanning v. Dolan, 128 Mo. 323; Buckley v. Fraser, 153 Mass. 525; Estate Wm. G. Williams, 62 Mo. App. 339; Moran v. Stewart, 122 Mo. 295; sec. 4520, R. S. 1889. (4) Plaintiff having been legally adopted as a child and heir of Jas. Lynn, that fixed her status as an heir, and she should be considered so in our Statute of Descents. Fosburgh v. Rogers, 114 Mo. 133; Ross v. Ross, 129 Mass. 266; Power v. Hafley, 85 Ky. 671; McKamie v. Baskerville, 86 Ky. 459. (5) In the statute authorizing plaintiff's adoption there are no limitations against her general right to inherit from adopter as any other natural child. Sec. 5248, R. S. 1899; In matter Chas. B. Clements, 78 Mo. 352; Fos-

burgh v. Rogers, 114 Mo. 133; Ross v. Ross, 129 Mass. 266; Moran v. Stewart, 122 Mo. 295, 132 Mo. 73, 173 Mo. 217; sec. 4518, R. S. 1889; In Re Estate Moran, 151 Mo. 557. (6) Lillie Hockaday having been adjudicated a child and heir of James Lynn, she thereby became to all intents and purposes a descendant of Jas. Lynn, and as such entitled to inherit from Wm. E. Lynn, deceased. Secs. 4465, 4518, R. S. 1889; Moran v. Stewart, 122 Mo. 295. (7) The Legislature had the same power to give Lillie Hockaday as an adopted child the right to inherit as to a bastard. Moore v. Moore, 169 Mo. 440; Fosburgh v. Rogers, 114 Mo. 133; Power v. Hafley, 85 Ky. 671; Virgin v. Marwick, 97 Me. 578; Warren v. Prescott, 84 Me. 483; McKamie v. Baskerville, 86 Tenn. 459; sec. 2916, R. S. 1899. (8) The following cases relied on by defendants in the court below, to-wit: Keegan v. Geraghty, 101 Ill. 26; Clarkson v. Hatton, 143 Mo. 47; Meador v. Archer, 23 Atl. 521; Phillips v. McConica, 59 Ohio St. 1; Estate Sunderland, 60 Iowa 732; Moore v. Moore, 35 Vt. 98; Reinders v. Koppelman, 68 Mo. 482; it is insisted will not sustain the contention of respondents in this case.

*Allen Glenn* for respondents.

(1) This property was not James Lynn's property; was not subject to payment of James Lynn's debts. Neither could he pass it by will, nor could he bind it by contract. Barnum v. Barnum, 119 Mo. 67; Estate Wm. G. Williams, 62 Mo. App. 350; 1 Woerner's Am. Law (2 Ed.), 140; secs. 2908, 146, R. S. 1899; Westerman v. Schmidt, 80 Mo. App. 346. (2) Adopted heir is not a bodily heir of adopting parent. Clarkson v. Hatton, 143 Mo. 59; Blodgett v. Stowell, 75 N. E. 138. (3) Nor will wife of adopter inherit from adopted child. Reinders v. Koppleman, 68 Mo. 482; Upson v. Noble, 35 Ohio St. 655; Hale v. Robbins, 53 Wis. 514; Hill v. Nye, 17 Hun 457; Isenhour v. Isenhour, 52 Ind.

328; Sharkey v. McDermott, 16 Mo. App. 80.  (4) For all purposes of inheritance from the adoptive parent, the adopted child becomes and is the lawful child of such adoptive parent, save in so far as the statute authorizing the adoption may otherwise provide.  Such inheritable right does not conflict with the Statute of Descents, for the statute with regard to adoption points out who are to be considered children within the meaning of the Statute of Descent.  However, as against the adopted child, the statute should be strictly construed, because it is in derogation of the general law of inheritance, which is founded on natural relationship and is a rule of succession according to nature which has prevailed from time immemorial.  1 "Cyc." 931 and 32; Meier v. Buchter, 94 S. W. 883; Clarkson v. Hatton, 143 Mo. 52; Moran v. Moran, 151 Mo. 558; Moran v. Stewart, 132 Mo. 73; Fosburgh v. Rogers, 114 Mo. 122.  (5) An adopted child cannot inherit from the collateral kindred of its adoptive parent, nor from the ancestors of the adoptive parents, nor from the adoptive parent's natural children.  1 Cyclopedia of Law and Procedure, 933, clause 3; VanMetre v. Sankey, 148 Ill. 536; Keegan v. Geraghty, 101 Ill. 26; In Re Sunderland Estate, 60 Iowa 732; Moore v. Moore, 35 Vt. 98; Meador v. Archer, 65 N. H. 214; Phillips v. McCornica, 59 Ohio St. 1; Quigley v. Mitchell, 41 Ohio St. 375; Barnhizel v. Ferrell, 47 Ind. 335; Helms v. Elliott, 89 Tenn. 446; 27 Am. and Eng. Ency. Law (2 Ed.), 334; 7 Ballard on Real property, sec. 169; Warren v. Prescott, 17 L. R. A. 438; Tiffany on Domestic Relations, p. 222; VanDerlyn v. Mack (Mich.), 66 L. R. A. 437.  (6) Bastards inherit and transmit inheritance on part of the mother.  Sec. 2916, R. S. 1899.  Not so with adopted children; their rights extend wholly to the adopting parties.  Sec. 5248, R. S. 1899.

LAMM, J.—Cast on demurrer lodged below, plaintiff stood on her petition, submitted to judgment and appealed.

The case is this:

In 1900 William E. Lynn, a bachelor, died intestate, seized of an undivided half interest in a farm of 295 acres in Cass county, leaving surviving him a brother, Cicero, and nephews and nieces (the children of a deceased brother and the children of a deceased sister) and their descendants. The deceased brother (James Lynn) died in 1896, leaving one son and also an heir by adoption, the plaintiff, now intermarried with one Hockaday.

Plaintiff's theory being that she was an heir of her adoptive father's brother, William E. Lynn, she sued Cicero and said surviving nephews and nieces (and the descendants of those dead) in partition.

In addition to conventional averments, plaintiff pleaded her adoption, her intermarriage with Hockaday, and further set forth an adjudication in her favor establishing her right as an adopted child of said James Lynn. [See Lynn v. Hockaday, 162 Mo. 111.]

Defendants' theory being that plaintiff took nothing as heir to the brother of her adoptive father, and all the facts appearing in her petition, they demurred with the result aforesaid. Such demurrer conceded the truth of every averment well pleaded in the petition, hence the issue below became one of law. It is, moreover, one of first impression in this State, and may be formulated, thus:

Does an adopted child, by reason of such adoption, become an heir to the real estate of a brother of her adopting parent who died after such parent, intestate?

Or, put another way, as formulated by defendants' counsel: "Does the adoption make her an heir only to the property of James Lynn, the adopting parent, or does the adoption make her an heir by representation in all the property which might have come to

her adopting parent had such adopting parent survived his bachelor brother?''

The question presented being new, its answer must be got at by attending to the history of the law of adoption, its growth, the Statute of Adoption, the Statute of Descents and Distributions, the analogies of the law to be searched out in cases decided by this court on related questions, and to the persuasive authority of the pronouncements of the highest courts of other States.

Adoption was unknown to the old common law of England. [Ross v. Ross, 129 Mass. 1. c. 262; Schouler's Dom. Rel. (5 Ed.), sec. 232.] It was known to the Roman law, was attended by ceremonial dignity and was of deep meaning and far-reaching results—a notable historical example of which is cited by NAPTON, J., in Reinders v. Koppelmann, 68 Mo. 1. c. 496 (from the leading case of Vidal v. Commagere, 13 La. Ann. 517) whereby Tiberius, being the stepson and adopted son of Augustus, his nephew, Germanicus (adopted by Tiberius on the command of Augustus Caesar), became the grandson of Augustus himself.

"Adoption," says MERRICK, C. J., in Vidal v. Commagere, *supra*, "was known to the Athenians and Spartans, as well as the Romans and ancient Germans, and was familiar to the writers of the New, if not the Old Testament." [See, also, In the Matter of Upton, 16 La. Ann. 175; 1 Cyc. 917; Abney v. DeLoach, 84 Ala. 393.]

It seems to have taken root in Egypt (Exodus 2:10). Paul, himself a lawyer profoundly instructed in Hebrew jurisprudence, assumed the doctrine of adoption to be well known to his readers, and borrows the use of the doctrine as a hammer to clinch nails driven by him on matters of faith. [Rom. 8: 16, 17. *q. v.*] The doctrine was not unknown to the Babylonians—witness the Code of Hammurabi, compiled from 2285 to 2242 B. C. Sections 185 to 193 inclusive of that code are curious and read as follows:

"Section 185. If a man has taken a young child

'from his waters'" (like Moses was taken by the daughter of Pharaoh, possibly, *q. v.*) "to sonship, and has reared him up, no one has any claim against that nursling.

"Section 186. If a man has taken a young child to sonship, and when he took him his father and mother rebelled, that nursling shall return to his father's house.

"Section 187. The son of a NER-SE-GA, a palace warder, or the son of a vowed woman no one has any claim upon.

"Section 188. If an artisan has taken a son to bring up, and has caused him to learn his handicraft, no one has any claim.

"Section 189. If he has not caused him to learn his handicraft, that nursling shall return to his father's house.

"Section 190. If a man the child whom he took to his sonship and has brought him up, has not numbered him with his sons, that nursling shall return to his father's house.

"Section 191. If a man, after a young child whom he has taken to his sonship and brought him up, has made a house for himself and acquired children, and has set his face to cut off the nursling, that child shall not go his way, the father that brought him up shall give to him from his goods one-third of his sonship, and he shall go off; from field, garden, and house he shall not give him.

"Section 192. If a son of a palace warder, or of a vowed woman, to the father that brought him up, and the mother that brought him up, has said 'thou art not my father, thou art not my mother,' one shall cut out his tongue.

"Section 193. If a son of a palace warder, or of a vowed woman, has known his father's house, and has hated the father that brought him up or the mother that

brought him up, and has gone off to the house of his father, one shall tear out his eye.''

Adoption was also an incident of Spanish law, was incorporated into the Code Napoleon, and from that code (or the Spanish law) found its way through Louisiana and Texas into the statutes of their sister States.　[Tiffany's Per. & Dom. Rel. sec. 112; Ross v. Ross, *supra;* Reinders v. Koppelmann, *supra.*]

As shown by NAPTON, J., in the Reinders case, our statute was not directly borrowed from the Roman law, and is, therefore, not attended with all the incidents of that law—one incident of which was that the adopted child took on the full rights of a child in its new family and lost its *birth rights,* becoming a stranger and an alien in the family of its origin.

From the twilight of remotest time it was considered that the ''life of the flesh was in the blood.''　[Lev. 17: 10, 11, 12.]　Blood was of the mysterious essence of religious rites.　The blood atonement, the blood tie, to have the same blood run in one's veins, to be bone of the bone, flesh of the flesh, were of the essential elements of things, earthly and spiritual.　Hence, when the Mingo chief exclaimed, ''There runs not a drop of my blood in the veins of any living creature,'' the picture of his savage desolation was made complete at one stroke.

Nevertheless, it is pointed out by those scholars who have dug up the origin of things from the dust of the past that the yoke of the blood tie, in this age or that, lay loosely on ancient peoples.　It is shown that children might be lawfully exposed (devoted) to death, fed to beasts, burned in the red hot bowels of war idols, sacrificed to vows—witness the fate of Jepthah's daughter and the fate of Iphigenia, the child of Agamemnon's loins; and vacancies were filled by transplanting, or, to put it otherwise, grafting was allowed. Especially was this transplanting in vogue during the

decadence of the Roman empire. [Schouler's Dom.
Rel. (5 Ed.), p. 362.] It may, then, be said that,
whether from sentimental causes or peculiarities of
feudal tenures, the adoption of children came to be
eyed somewhat askance by Anglo-Saxon peoples.

Adoption being unknown to the common law and
in derogation of it, statutes of adoption have always
been more or less strictly construed as against the ad-
opted child. [Keegan v. Geraghty, 101 Ill. 26; Clark-
son v. Hatton, 143 Mo. l. c. 57; Reinders v. Koppel-
mann, 94 Mo. 338.] This frosty attitude is shadowed
forth in the peculiar and cautious terminology of text-
writers. Thus, Tiffany speaks of the relation as an
"artificial relation." [Tiffany's Per. & Dom. Rel., sec.
112.] Schouler speaks of the relation as a "quasi-
parental relation." [Schouler's Dom. Rel. (5 Ed.), sec.
232.] Strict construction, however, is not extended to
the act of adoption itself. That is liberally construed
in favor of the child adopted. [Parsons v. Parsons,
101 Wis. 76; Lynn v. Hockaday, 162 Mo. *supra;* Shar-
key v. McDermott, 91 Mo. 647.]

Speaking of this plaintiff, VALLIANT, J., in Lynn
v. Hockaday, *supra,* p. 126, says: "Like a bud that
has been cut from its natural stem and grafted into a
foreign tree, she grew into the family and became a
part of its very life—everything that adoption contem-
plates was accomplished." That metaphor, chaste as
a gem, does not mean, nor was it intended to mean, that
plaintiff passed current as an heir, made such by the
mold and stamp of consanguinity. It means that as be-
tween her and James Lynn she was given "everything
that adoption contemplates"—that and no more. So,
too, BLACK, J., in Moran v. Stewart, 122 Mo. l. c. 299,
says: "For all the purposes of inheriting *from the
adopting parent* the adopted child becomes, and is, the
lawful child of such adopting parent."

It appears, then, that the event of adoption fixes

the *status* of the child adopted in relation to the adoptive parent and to no one else.  Says Tiffany, *supra*: "The law cannot, and does not purport to, do the work of nature, and create one a child who by nature is a stranger.  But it can and does fix the *status* of the adoptive child to the adoptive parent as substantially the same as the *status* of a natural child."

OSBORN, J., speaking to the point in Barnhizel v. Ferrell, 47 Ind. 1. c. 338, says:

"By the act of adoption, the child is entitled to inherit from his adopted" (adoptive?) "parent as his heir, in the degree of a child.  [Barnes v. Allen, 25 Ind. 222, 226.]  The act does not provide that he shall be the child of the adopting parent, but he shall take the name, and be entitled to take his property by descent or otherwise, the same as he would if he was his child or natural heir, and the adopting parent shall occupy the position toward the child of a father or mother, and be liable in every way as such.  In Schafer v. Eneu, 54 Pa. St. 304, it is said: 'The right to inherit from the adopting parent is made complete, but the identity of the child is not changed; one adopted has the rights of a child without being a child.'  And in Commonwealth v. Nancrede, 32 Pa. St. 389, the same court say: 'Giving an adopted son a right to inherit, does not make him a son in fact.  And he is so regarded in law, only to give the right to inherit.' "

In Schafer v. Eneu, *supra*, STRONG, J., further said: "Adopted children are not children" (*i. e.*, by the law of nature) "of the person by whom they have been adopted, and the Act of Assembly does not attempt the impossibility of making them such."  Indeed, it may be asked:  Which of you by taking thought can add one cubit to his stature?  No more, then, can A, by taking thought (*i. e.*, by making a contract) make a stranger of blood kin to A's own kindred — make an adopted child have inheritable blood to A's collateral kin.

Apposite to this view it may be said that laws of descent and distribution, barring the one incident of a husband and wife's rights by marriage, are universally built on, and around, the idea of blood kinship. Inheritance flows naturally with the blood. [Hole v. Robbins, 53 Wis. 1. c. 517.]

True it is that laws of descent and distribution are subject to arbitrary change by the law-making power, but to arbitrarily change them so as to repudiate or eliminate the basic principle of blood kinship would breed trouble and dismay. So deep does that notion run in the human breast and through our case-made law that if it be ignored in a will the fact of such unhappy and unnatural disposition of property may be put in as evidence tending to show testamentary incapacity, or undue influence, and when united with other facts, may be sufficient to set the will aside. [Meier v. Buchter, 179 Mo. 68.]

An analysis of Revised Statutes 1899, section 2908, of our Statute of Descents will show how closely it adheres to blood kinship in the devolution of estates. By that section the property (not limited by a marriage settlement) of one who dies intestate is made to descend in parcenary to *"his kindred,"* male and female, subject to the payment of debts and the widow's dower. The word "kindred," in its primary legal acceptance, means "relatives by blood." [Black's Law Dict., Tit. "Kindred;" Keteltas v. Keteltas, 72 N. Y. 312; Helms v. Elliott, 89 Tenn. 446.]

The idea of blood kinship is sharply accentuated by section 2911 of the same statute. That section directs that when inheritance is directed to pass to the ascending and *collateral kindred* of the intestate, if part of such collaterals be of the whole blood of the intestate, and the other part of the half blood only, those of the half blood shall only inherit half as much as those of the whole blood, etc.

But it is useless to further pursue the theme, since, in a general way, it may stand assumed as sound law that consanguinity is so fundamental in Statutes of Descents and Distributions that it may only be ignored by construction when courts are forced so to do, either by the terms of express statute or by inexorable implication.

The Supreme Court of Indiana, in an adoption case, Humphries v. Davis, 100 Ind. 274, in a most learned opinion by ELLIOTT, J., somewhat criticises the conclusion arrived at in the earlier case of Barnhizel v. Ferrell, *supra,* and somewhat criticises the conclusion reached by our own court in Reinders v. Koppelmann, 68 Mo. *supra.* It is not to our purpose to weigh those criticisms, but we may adopt with approval the following language from the Humphries case: "A statute is not to be construed as if it stood solitary and alone, complete and perfect in itself, and isolated from all other laws. It is not to be expected that a statute which takes its place in a general system of jurisprudence shall be so perfect as to require no support from the rules and statutes of the system of which it becomes a part, or so clear in all its terms as to furnish in itself all the light needed for its construction. It is proper to look to other statutes, to the rules of the common law, to the sources from which the statute was derived, to the general principles of equity, to the subject of the statute, and to the condition of affairs existing when the statute was adopted."

Referring to the foregoing general rules for finding a place for a new statute, setting bounds to its orbit, and making it dovetail into and become harmonious with a general system of law, it may be said this court has applied the same principles in effect. Thus, in Moran v. Stewart, 122 Mo. 295, while guardedly restricting the right of an adopted child to inheritance from its adoptive parent, it is held that (for that

purpose) the adopted child is a *child* within the purview of Revised Statutes 1899, section 2939, on dower. It is there held that the event of adoption defeats the widow's right to elect under the statute to be endowed of one-half of the real estate and personal estate belonging to her husband upon his death without leaving any "child or other descendants." See, also, Fosburgh v. Rogers, 114 Mo. l. c. 133, in which the strict letter of the Statute of Descents and Distribution is gently wrested to allow an adopted child to come in to inheritance, but only as to the adoptive parent. Other cases might be cited to the same effect.

In fact, it may be laid down as a general conclusion that while the Statute of Adoption must be read into the Statute of Dower and that of Descents and Distribution, it is with this singularity, always to be observed, *viz.*, that the adopted child is so let in only for the purpose of preserving in full its right of inheritance from its adoptive parent; and the door to inheritance is shut and its bolt shot at that precise point.

If we look to our Statute on Adoption it will be found to be writ large there that an adopted child bears only the badge and relation of child to the adopting parent. In Revised Statutes 1899, section 5246, it is provided that "if any person in this State shall desire to adopt any child . . . as his or her heir or devisee, it shall be lawful for such person to do the same by deed," etc. The very next section (section 5247) provides that: "A married woman, by joining in the deed of adoption with her husband, shall, with her husband, be capable of adopting any child or children." It will thus be seen that, in the legislative mind, the effect of the adoption of a child is restricted to the adopting parent, and, hence, the adopted child does not become the child of a married woman by the adoption of her husband, but to become such child the adoption must be joined in by the wife. If this be true of

a wife, how much more strongly must it be true of collateral kinsfolk?

Defendants argue that aid for their theory may be had from section 5248, which provides in substance that from the time of filing the deed of adoption with the recorder the adopted child shall have the same right against the person or persons executing the deed, for support and maintenance and for proper and humane treatment, as a child has by law against lawful parents; and shall have and enjoy such rights and privileges against the persons executing the deed of adoption—the last clause of that section reading: "This provision shall not extend to other parties, but is wholly confined to parties executing the deed of adoption." This section has been up for construction more than once. The most elaborate effort in its exposition was in In The Matter of Clements, 78 Mo. 1. c. 355, where Hough, C. J., for this court, put this construction thereon, to-wit, that its peculiar language refers to the custody and control of the child adopted, and "as the Legislature had no power to authorize one person, whether acting from motives of charity, benevolence or caprice, to transfer to himself at his own electing, the custody and control of the child of another," nothing in that section should be binding on the natural parents of the adopted child without the consent of such natural parents, which consent might be evidenced by joining in the deed. This section, therefore, throws no light on one side or the other of this controversy except there may be some slight evidence found therein of the trend of the legislative mind toward binding no one to the event of adoption except the actual parties to the event.

As said heretofore, the exact question presented has not been adjudicated by an appellate court in this State, but by analogy certain postulates may be established, the trend of the judicial mind may be got at and a sound conclusion reached.

For instance, if one inherit a share in an estate which his deceased father would have inherited, he inherits not from the father but directly from the intestate. [Barnum v. Barnum, 119 Mo. 63.] Applying that principle here, if plaintiff is to inherit at all from William E. Lynn, it is not from her adoptive father, James Lynn, who died before William E., but she is to inherit directly from William E. Lynn. This being so, her kinship to William E. Lynn is the only conduit through which her title may flow. The blood tie is the open sesame to unlock the treasure of inheritance. But here there is no kinship in the case—nothing but a dry contract with another. As to William E. Lynn, the event of adoption was *res inter alios acta*—plaintiff is an alien to his blood, and, therefore, it may well be argued, as defendants' counsel do, that by the Statute of Descents and Distributions she takes nothing, under the doctrine of Barnum v. Barnum, *supra*.

Again, it was held in Clarkson v. Hatton, 143 Mo. 47, that the phrase "bodily heirs" did not include adopted children. It was held further, showing the strictness of this court's construction in the matter in hand, that the words "children" and "heirs" in certain sections of the statutes of uses and trusts pertaining to fee tail estates do not include adopted children. And, further, that an adopted child remains the child of its natural parents and inherits from those parents.

It was held in Reinders v. Koppelmann, 68 Mo. *supra*, that the estate of an adopted child (on his death intestate) will go to his blood relations, and not to his relations by adoption. It's a poor rule, won't work both ways.

In Reinders v. Koppelmann, 94 Mo. 338, it was held, in effect, that the phrase "nearest and lawful heirs of my said wife" did not include an adopted daughter of said wife. After considering the case in the light of the language of testator himself, BRACE, J., *arguendo*, formulates the views of this court (which are not with-

out weight on the issue in the case at bar), as follows:

"If, however, the testator had not hung out this light, by which his meaning may be easily read, it would seem that the very terms, 'nearest and lawful heirs,' would be sufficient to exclude the idea of an adopted heir; the *status* or relation of an adopted heir is a lawful one, since the law sanctions and provides a method for its creation, but the relation is not the creature of the law, but of the deed of adoption; a child by adoption is, in a limited sense, made an heir not by the law, but by contract evidenced by deed; adopted heir or heir by adoption would be appropriately descriptive of such relation; contradistinguished from such an heir are those upon whom the law casts descent, who are constituted heirs by law; these are appropriately described as heirs-at-law, or heirs by the law. This distinction would, of course, be of little value in construing the will of a layman, if it were not almost universally and unconsciously recognized in the affairs of life; and that in common parlance we find that the terms, heirs-at-law and lawful heirs, are used indiscriminately as synonymous and convertible terms, and whenever either is used, they are invariably referred to the heirs upon whom descent is cast by law, and not to an heir by adoption. The relation of an heir by adoption is an exceptional and unusual one, and does not come within the ordinary and usual meaning of the words, lawful heirs, and those words ought not to be held, *ex vi termini,* to include an adopted heir, but when the testator uses the further and qualifying word 'nearest,' it would seem that one who is simply and only an heir by deed, deriving all his rights from the deed of adoption executed long after the death of the testator, and none against any person other than his adoptive parent, must, by the very terms of the will under which he claims, be held to be excluded."

Considering the history and Statute of Adoption, the force of the foregoing rulings, and the reasons un-

derlying the same, *i. e.,* the philosophy of the law, we are persuaded to the conclusion that the tendency of judicial construction in Missouri is not toward, but away from, the theory so warmly urged upon us by plaintiff's learned counsel.

If we look elsewhere for persuasive authority, we find the exact point (and points involving similar contentions) uniformly held against plaintiff's theory. To this effect are Van Matre v. Sankey, 148 Ill. 536; Keegan v. Geraghty, 101 Ill. 26; In re Sunderland Estate, 60 Iowa 732; Moore v. Moore, 35 Vt. 98; Meader v. Archer, 65 N. H. 214; Phillips v. McCorica, 59 Ohio St. 1; Quigley v. Mitchell, 41 Ohio St. 375; Barnhizel v. Ferrell, 47 Ind. 335; Helms v. Elliott, 89 Tenn. 446; Van Derlyn v. Mack, 137 Mich. 146; Morrison v. Sessions' Estate, 70 Mich. 297; Wyeth v. Stone, 144 Mass. 441.

The doctrine to be gathered from the foregoing cases is announced to be, in effect, to deny the right of the adopted child to succeed to the estate of any member of the adopting family other than the adopting parent, and that such adopted child does not succeed to the estate of ancestors or collateral kin of the adopting parent, nor to the estate of children born to the adopting parent. [27 Am. and Eng. Ency. of Law (2 Ed.), 334; 1 Cyc., 933.]

Though plaintiff's learned counsel have industriously collated cases from other jurisdictions, yet we find on examination they have cited us to no case holding a doctrine contrary to the above. Those cases apparently squinting at a contrary view, as, for example, Stearns v. Allen, 183 Mass. 404, take color from peculiar statutory provisions there under exposition. And the same may be justly said of the other cases relied on.

But, it is argued by plaintiff's learned counsel that such interpretation of the law puts too sour a complex-

ion on it. If this be true, relief must be sought from the Legislature and not from the Judiciary.

It is finally argued that such interpretation puts an adopted child in a worse plight than a bastard—a bastard being allowed to inherit from his mother's brothers. [Moore v. Moore, 169 Mo. 432; R. S. 1899, sec. 2916.] If this argument were based on a correct premise, it ought not to control. But the premise is faulty. The bastard at common law was the child of nobody—*nullius filius*. He was a living example of the exceedingly old and right bitter adage (doubted, as unfair, even when in use): the fathers have eaten sour grapes and the children's teeth are set on edge. [Jer. 31: 30, 31.] He could not inherit from the father—he was unknown. The law branded the mother, figuratively (and sometimes, actually), with a scarlet letter —and, to interdict the sin, denied inheritable blood to the sinless child. [2 Kent, 212.] But such is not the statutory law of modern times. By our law a bastard is allowed to inherit from his mother and (through her) from her blood kin, and she may inherit from her bastard child. [R. S. 1899, sec. 2916, *supra.*] But in the case of an adopted child, how much more kindly does the law deal with him? In the first place, he may inherit from, and transmit inheritance to, his own blood kin, lineal as well as collateral. In the second place, by the event of adoption, he has, *ex contractu*, the right of inheritance from his adoptive parent. And, if the doctrine of NAPTON, J., in Reinders v. Koppelmann, 68 Mo. *supra*, be sound, he may not only inherit from the adoptive parent, but the property thus inherited may pass away from the blood of the adoptive parent and go to the blood of the adopted child. The *status* of an adopted child in Missouri is thus in a sense made superior (in rights of inheritance) to any other child born in lawful wedlock—not to speak of those who have a bar sinister upon their escutcheon.

The case has been presented to us with such research and insistence by plaintiff's learned counsel that we have given it what care and diligence we can command. And, turn the matter as we may, and approach it from any side we may, we can come to but one conclusion, and that is: that under the Statute of Adoption and under the Statute of Descents and Distribution, on the doctrine of this court enunciated in other cases, and on authority from other jurisdictions, as well as upon the reason and natural justice of the thing, the plaintiff cannot recover.

Hence, the judgment below must be affirmed.

All concur.