[S. F. No. 12820. In Bank.—November 16, 1928.]

In the Matter of the Estate of ANNA B. MERCER, Deceased. MURRAY B. EMERY, Appellant, v. H. D. NIXON, Respondent.

Puter & Quinn, Marc. F. Morrison and Charles Mannon for Appellant.

Delos A. Mace for Respondent.

PRESTON, J.—This appeal involves the right to letters of administration upon the estate of Anna B. Mercer, deceased, and, as a necessary consequence, the right of succession to that portion of her estate which was formerly the community property of herself and her predeceased husband, William L. Mercer. The facts are not in dispute.

On and prior to June 9, 1873, and for thirty-five years thereafter, the above-named parties were wife and husband. On said date the husband, with the express written consent in open court of the wife, regularly adopted as his child one Hermina Augusta Tappendorf, then aged two years, the decree reciting: " . . . and she is hereby declared henceforth and forever to be the lawfully adopted child of the said W. L. Mercer, and that henceforth and forever she shall be

regarded and treated in all respects as the child of the said W. L. Mercer.''

The child was reared in said family, and is now known in the record as Hermina A. Hansbrough. After accumulating considerable community property, the said William L. Mercer died testate on November 16, 1908, bequeathing the bulk of his estate to his widow, decedent herein. Later and on October 5, 1927, Anna B. Mercer died intestate, leaving an estate, a large portion of which was formerly the community property of herself and her said predeceased spouse. Said decedent left no issue and neither spouse left parents surviving. The nearest blood kin to the decedent is Maria Benson Emery, a sister. The said adopted daughter nominated respondent H. D. Nixon as administrator of said decedent's estate, and said sister nominated Murray B. Emery to the same office. The nominees have each petitioned for letters of administration, both claiming to be qualified for same under section 1365 of the Code of Civil Procedure, and thus has arisen the issue for our determination.

The court below gave and made its order appointing as administrator of said estate respondent Nixon, the nominee of said adopted daughter, and the nominee of said sister has appealed therefrom. The appeal turns upon the question as to whether said adopted daughter will succeed under subdivision 8 of section 1386 of the Civil Code to that portion of the estate of said decedent which was the community property of herself and her husband. This question in turn is resolved by the scope we declare the word ''children'' to have in that portion of said subdivision reading as follows: ''If the deceased is a widow, . . . and leaves no issue, and the estate, or any portion thereof, was common property of such decedent and . . . her deceased spouse, while such spouse was living, such property goes in equal shares to the children of such deceased spouse. . . . ''

This provision, of course, is to be read in connection with section 228 of the Civil Code, as follows: ''A child, when adopted, may take the family name of the person adopting. After adoption, the two shall sustain toward each other the legal relation of parent and child, and have all the rights and be subject to all the duties of that relation.''

This appeal has been ably presented by both sides. Appellant relies upon the principle set forth in the case of *In*

*re Darling,* 173 Cal. 221, 226 [159 Pac. 606]. In that case John Darling, deceased, died intestate. Arnold Darling Bennison, the issue of the marriage of a predeceased son of decedent, was regularly adopted, prior to the death of decedent, by H. G. and Eda Bennison, both of which foster parents survived said decedent. The court held that, under subdivision 1 of section 1386 of the Civil Code, an adopted child is entitled to succeed to the share in the estate of the father of his father by blood, that such father by blood would have succeeded to had he survived his own father. In discussing the question, the court said: "The adoption statutes of this state do not purport to affect the relationship of any person other than that of the parents by blood, the adopting parents and the child. It is the person adopting and the child who, by the express terms of the section, after adoption 'shall sustain toward each other the legal relation of parent and child and have all the rights and be subject to all the duties of that relation,' and it is the parents by blood who, from the time of the adoption, are 'relieved of all parental duties towards, and all responsibilities for the child so adopted, and have no right over it,' and are, in the eyes of the law, no longer its parents. The adoption simply fixes the *status* of the child as to its former and adopted parents. To its grandparents by blood it continues to be a grandchild, and the child of its parents by blood. It does not acquire new grandparents in the persons of the father and mother of an adopting parent.

"It is only in so far as it is necessary to protect the full rights of the child as a child of the adopting parents and the corresponding rights of the adopting parents as father and mother of the adopted child that the statutes relative to adoption can play any part in the construction of section 1386 of the Civil Code, the inheritance statute here involved. As was said in *Hockaday* v. *Lynn,* 200 Mo. 456 [118 Am. St. Rep. 672, 9 Ann. Cas. 775, 8 L. R. A. (N. S.) 117, 98 S. W. 585] : 'In fact, it may be laid down as a general conclusion that while the statute of adoption must be read into the statute of dower and that of descents and distribution, it is with this singularity always to be observed, viz., that the adopted child is so let in only for the purpose of preserving in full its right of inheritance from its adoptive parent.' This was followed by the statement, 'and the door to in-

heritance is shut and its bolt shot at that precise point,' a statement which appears to be sustained by the authorities generally in the absence of plain statutory provision to the contrary. The result would appear to be that within the meaning of subdivision 1 of section 1386 of the Civil Code, Arnold Darling Bennison was, at the date of the death of deceased, so far as deceased himself was concerned, 'issue' of a 'child' of his deceased child, John Darling, Jr., and entitled to succeed as such to the share his father would have taken if alive, by right of representation."

The further contention of appellant is that inasmuch as an adopted child cannot inherit from the parents, nor from the brothers or sisters of the adopting parent, nor from its own foster brothers or sisters, but does inherit from its blood relatives of these classes, it must follow that the adopted daughter in the case before us may not inherit from the widow of the adopting father to whom she bears no blood relation. In other words, an adopter may not, it is said, corrupt the blood stream by foisting heirs upon his family. Stating the proposition another way, an adopted child is allowed to inherit from but not through its adopting parent.

Respondent, on the other hand, contends that the question is one of statutory construction, and when construed it gives *ex proprio vigore* the right of inheritance to the adopted daughter; that the child once adopted remains the child of the adopting parents forever; that this relation is curtailed and restricted if such child may not at all times enjoy as to the adopting parent the privileges of a natural child; in other words, that the relation of the child to its adopting parent brings it into the class of persons designated by law to take in the contingency we have before us. This contention is again stated by respondent in the following manner: "She is not seeking to inherit through her father by substitution or right of representation. She inherits from the decedent because of her status as 'child' of her father, W. L. Mercer. As pointed out in the *Estate of Marshall*, 42 Cal. App. 683 [184 Pac. 43], 'The respondent's relationship to her deceased mother would be the determining factor in establishing her status as an heir of Thomas E. Marshall.' "

Appellant raises, it is true, an intricate question of law, and he argues it ingeniously and persuasively, but it fails to

satisfy the mind. The family blood stream of neither W. L. Mercer nor Anna B. Mercer is in any way contaminated by the infusion of foreign blood into it. This is at once made clear by merely supposing that when these spouses inter-married, the husband possessed a natural daughter by a previous marriage. No one would contend for a moment that such a daughter would not have unquestionably the right under this statute to the community property in question. But we would have in such case an heir who bore no blood relationship whatever to the decedent and, to our mind, a person in no different class than the adopted daughter in the case before us. The statute directing succession need not follow the ties of blood.

The weakness of appellant's position is simply that the adopted daughter cannot have the full benefit of her right as a daughter of the deceased husband in her relation to said husband unless the word "children" in this statute of suc-cession is held to include her. The predeceased spouse had an interest in, if not full ownership of, the property in ques-tion. Natural justice suggests that his daughter have an interest therein. In making his will he may have had the very contingency in mind that has arisen, and decedent, too, may, with knowledge of this statute, have declined to make a will.

The legislative intent is that such common property go to the child or children of the predeceased spouse and, in the absence of such children, to divide same equally between the families of the respective spouses (*Estate of Brady,* 171 Cal. 1, 4 [151 Pac. 275]). There is nothing in section 228 that in any way contemplates termination of the status of an adopted child when once it is lawfully fixed (*Estate of Jobson,* 164 Cal. 312 [43 L. R. A. (N. S.) 1062, 128 Pac. 938] ; *Estate of Hunsicker,* 65 Cal. App. 114, 118 [223 Pac. 411]). Neither the death of the adopter nor of the adopted child would have any such effect.

As another illustration, suppose decedent had willed the property to "my heirs" or to the "children of my deceased husband," would there be any question but that such a testament would include the said adopted daughter? Ad-mittedly, in subdivision 1 of section 1386, the word "issue" included an adopted child (*In re Newman,* 75 Cal. 213 [7 Am. St. Rep. 146, 16 Pac. 887] ; *Estate of Winchester,* 140

Cal. 468 [74 Pac. 10]; *In re Darling, supra*). Appellant admits that the word "issue" in several places in said section does include an adopted child. Again, an adopted child has been held to be a lineal descendant of the adopting parent (*Estate of Winchester, supra; Warren* v. *Prescott*, 84 Me. 483 [30 Am. St. Rep. 370, 17 L. R. A. 435, 24 Atl. 948]). If this be conceded, it argues strongly for the rule that an adopted child is entitled to any legacy the law gives to the children of an adopting parent.

The whole matter is concluded by the observation that the cases cited and the principles urged by appellant furnish no sufficient reason for restricting the scope of the word "children" in the provision under review. To exclude adopted children from its scope would be to say that they are not entitled as to the adopting parent to the full rights of natural children, which is contrary to the express provision of the statute (secs. 227 and 228, Civ. Code), and the terms of the decree of adoption. Even the case of *Hockaday* v. *Lynn*, 200 Mo. 456 [118 Am. St. Rep. 672, 9 Ann. Cas. 775, 8 L. R. A. (N. S.) 117, 98 S. W. 585], above referred to, concedes that "the adopted child is so let in only for the purpose of preserving in full its right of inheritance from its adoptive parent."

In the case of *Patterson* v. *Browning*, 146 Ind. 160 [44 N. E. 993], a widower with children by his first marriage remarried, and afterward adopted a child. He died without issue by his second wife, leaving his wife, his natural children and adopted child all surviving him. Under a statute which gave to an adopted child all the rights in the estate of its adopting father or mother, by descent or otherwise, that it would take if a natural heir, coupled with a statute vesting the fee simple of a decedent's lands in his widow, "provided that if a man marry a second or subsequent wife, and has by her no children, but has children alive by a previous wife, the land which, at his death, descends to such wife, shall, at her death, descend to his children," it was held that the adopted child was a child of decedent, and, with the natural children, an heir to the estate.

*Warren* v. *Prescott, supra,* holds that a legally adopted child is a lineal descendant of its adopting parents within the meaning of the statutes of Maine and, as such, may take

a legacy given by will to one of its adopting parents, who predeceased the adopted child.

Lastly, we indorse the sentiment expressed in *Markover* v. *Krauss*, 132 Ind. 294, 302 [17 L. R. A. 806, 31 N. E. 1047, 1050], as follows: "As before suggested, we do not mean by this that the legislature has attempted to perform the impossible feat of doing the work of nature, and of creating a child of one's blood out of a stranger. We simply recognize and acknowledge the untrammeled power of the legislature to fix the legal status of the respective parties, and to control absolutely the manner in which property shall descend and be distributed." (See, to the same effect, *Estate of Hill*, 179 Cal. 683, 688 [178 Pac. 710].)

We, therefore, hold the nominator of respondent to be a person entitled to the benefit of said portion of subdivision 8 of section 1386 of the Civil Code and, as such, entitled to succeed to a portion of the estate of said decedent, and a proper person to nominate the respondent as an eligible person for letters of administration. The order of the court below is affirmed.

Richards, J., Shenk, J., Waste, C. J., Curtis, J., Seawell, J., and Langdon, J., concurred.

Rehearing denied.

All the Justices concurred.