BREAUX, C. J.
Marion Brown, alleging that she is the mother by adoption of Julia Eleanor Brown, after the death of the latter’s father, petitioned the court for an inventory, which was accordingly made, and the assets inherited by the minor from her mother and father were put down as worth $8,000.
Nothing was said of debts.
The act of adoption of the minor by Marion Brown states that under Act No. 81, p. 79, of the Legislative Session of 1872, she adopts her as her own child, declares in the act that the adopted child shall have all the rights of a legitimate child, and binds herself to provide for and maintain the same as if her own child.
The father, Edgar Boutcher Brown, intervened in the act of adoption and consented thereto. Her mother was dead at this time.
Shortly after this act of adoption Edgar Boutcher Brown died.
Marion Brown was appointed the child’s tutrix.
Mrs. Julia Munford Brown, the maternal grandmother of the minor, Julia Eleanor Brown, alleging that the minor had been in her charge and care since the death of her mother, Sue Willit Brown (when the child was only four months old), and alleging that she was the mother and only surviving parent of the deceased wife of Edgar Boutcher Brown, and the maternal grandmother of Julia Eleanor Brown, filed a rule to annul and set aside the appointment of Marion Brown as tutrix of Julia Eleanor Brown, also to have it declared that the act of adoption was null and void, and, further, to have it decreed that the petitioner is entitled to the care and custody of the minor child, and asked to be appointed her natural tutrix.
Defendant filed an answer controverting the right claimed by plaintiff in rule.
Our learned brother of the district court, with painstaking care, wrote an interesting opinion, from which wé excerpt the following:
“Mrs. Julia M. Brown, her grandmother, and Miss Marion Brown, the paternal aunt, are here engaged in a friendly contest for the tutorship of the minor, Julia Eleanor Brown. All parties appeared in court. Julia is a dear child, about five years of age, and these two good women, with hearts full of love for her, are claiming the privilege of bestowing that love in a true motherly way by rearing the child to noble womanhood.
“It is not always that the orphan’s lot is so fortunate, or that the court is so ably assisted in caring for its wards.
“The grandmother, with whitened hair and faltering step, faces the court with all the resolution and firmness of purpose of a much younger woman, ready and anxious to fulfill the precious charge left to her by her deceased daughter. Her heart beats stronger than it was wont to do, because she must live over again her young life with her child, now impersonated in that daughter’s daughter. She has a mother’s work to do, and she must be busy about it.
“That aunt, younger and more hearty, with a natural love for children, which is implanted in every true woman’s breast, asks that she be given the privilege of rearing her loved brother’s orphan child.
*53 “What a spectacle for that father and mother to look upon.
“Both applicants must be satisfied for the present with the knowledge that she hath done what she could. It is more than probable that in the natural course of events each one will have an opportunity for doing good in her own way for little Julia.”
The learned judge then in the opinion reviews the laws regarding tutorship, and concludes that neither applicant is a tutrix' by-nature, and, after having reviewed some of the decisions, he recognized the act of adoption as valid, but vacated the appointment of the aunt as tutrix, and appointed the grandmother as legal tutrix to the minor.
The quoted'portion of the opinion is highly creditable to the heart of the judge, and his review of the authorities to his study and industry.
The grandmother has a better right:
The adopter, it is true, had the absolute right to adopt the minor, and there is not a word reasonably to be said against the act. She was moved by an entirely proper feeling to rear and take care of her niece.
On the other hand, without the act of adoption, the grandmother was the proper person to appoint as the tutrix.
The grandmother is the only woman who has a right to the tutorship by the effect of the law, and the act of adoption does not afford ground to deny to the grandmother the right so clearly stated in the article of the Code on the subject. It cannot reasonably be contended that there was no ground for the appointment of a tutrix, for the adopter, conceiving that the appointment was necessary, had already applied for and obtained letters of tutorship. She had claimed as natural tutrix as in case of the mother, although the act of adoption had not conferred upon her the right to claim the natural tutorship as in case of a mother. By no construction can a law enacted to confer a right on a surviving mother be made to include the aunt, who is an adoptant, as having equal rights with the mother as relates to tutorship. There being no one entitled to the tutorship by nature, an appointment was to be made under the articles of the law authorizing the appointment by the effect of the law. The adoptant, in view of the application of the grandmother' for the appointment (by the effect of the law), is necessarily excluded. The grandmother of the minor is the only woman, after the mother, who has a right to the tutorship by the effect of the law. Adoption does not confer a right not given by law.
Not in point.
Decisions heretofore rendered do not bear directly upon the questions here involved, as, for instance, Vidal-Commagere Case, 13 Ann. 516, in which the court held that the adopted inherited the estate of the adoptant.
This right is provided specially in Rev. Civ. Code, art. 214, to wit: “The person adopted shall have all the rights of a legitimate child” — subject, however, to stated exceptions in the law, not of the least moment here.
It is nowhere stated in the Civil Code that the adopter shall have the right of a mother or father over the child; that the adopter shall abridge, as relates to the natural tutorship, the right of the natural tutorship in opposition to the demand of the tutor to be appointed tutor.
If that be correct, as it unquestionably is, it follows that the adopter is not in a better position (as relates to the tutorship) than the grandmother.
In the cited case above the right of the person adopted was at issue, and not in the least the right of the adopter. Neither in Succession of Hosser, 37 Ann. 841, nor in the Cunningham-Lawson Case, 111 La. 1026, 36 South. 107, was the right of the adopter considered. The adoptant here, Miss Brown, does not find support in the Haley Case, 49 Ann. 711, 22 South. 251.
*55 True, in the last cited case, the court correctly said that in the Upton Case, 16 Ann. 175, and in Succession of Forstall, 25 Ann. 430, the Legislature had broadened the law regarding adoption and that jurisprudence had followed in the movement forward.
Without specially reviewing that case any further, we will state that it has nothing in it to sustain the view that in a contest between mother or grandmother for the tutorship and the aunt, an adopter, the latter has preference. The written provision limiting the tutorship to the mother and grandmother is all-controlling. It is sufficient to say that no such question presented itself in the Haley Case, or in any of the cases cited in the argument, or in any case which has come within our research.
Act No. 64, p. 77, of 1868:
That act has encountered in time the effect of the repealing Act No. 31, p. 79, of the Legislative Session of 1872, which in part repealed the act of 1868. Succession of Dupre, 116 La. 1094, 41 South. 324.
In this decision it was held that it repealed all laws relating to the manner of adopting children. We have no thought leading to the conclusion that it went further. If there is any such meaning, if the discussion does extend further, it should be limited to the manner of adopting children. If the act cited be an existing act, as we think it is, except in so far as relates to the manner of adopting children, it remains that under the language of the act of 1868 the parental authority may be surrendered to the adopter.
But as to the effect of such a surrender we do not think it necessary to decide at this time. It is sufficient to say that there is no part of the act of adoption in this case that makes mention of parental authority as transferred. Only the word “adopted” is used. The adopter adopts the child. That is all.
It strikes us that, if it was intended to specially surrender parental authority, it should have been stated. But in any event the lawmaker never intended to place it im the power of any one, by adopting a child, to repeal a well-expressed article of the-Code. It does not give to the aunt the right of adopting a child and thereby defeating the demand of the grandmother.
For reasons stated, the judgment appealed, from is affirmed.
LAND, J., takes no part, not having heard the argument.