O’NIELL, C. J.
This is a contest for the tutorship of Marion Pelham, a girl 12 years old. When she was less than 2 years old she was adopted by Mrs. Henrietta Gaupp, by notarial act dated the 22d of September, 1913, under the provisions of the Act 31 of 1872, p. 79. The child’s mother, Mrs. Fannie Krebs Pelham, who was then a widow, signed the act, giving the child over to Mrs. Gaupp. She took the infant into her home and nursed her and cared for her until Mrs. Gaupp’s death — August 5, 1921. In her will, Mrs. Gaupp made the child her residuary legatee, leaving her an estate consisting of both real and personal property valued at $20,355.39. She appointed John Charles McGee tutor of the child, and appointed Nathan H. Feitel executor of the will.
The widow Pelham, mother of the child, married W. S'. Alexander and was divorced from him. When the executor of Mrs. Gaupp’s will had qualified, Mrs. Pelham came into court, and, averring that by her marriage to Alexander she had (under article 254, Rev. Civ. Code) forfeited her right to be confirmed as the natural tutrix of her *1024 child, petitioned the judge to call a family meeting in order that she might be appointed tutrix. The family meeting was called, and recommended the appointment of Mrs. Pelham as tutrix. In the meantime, John Charles McGee had expressed his acceptance of' the tutorship by the will of Mrs. Gaupp. The executor, therefore, on behalf of McGee, opposed the appointment of Mrs. Pelham and insisted that the will of Mrs. Gaupp should be carried out. The matter was regularly tried, resulting in a judgment for Mrs. Pelham, from which the executor has appealed. The judge ordered Mrs. Pelham to give bond for $20,355.39, from which order she has appealed.
The main question is whether Mrs. Gaupp, who was a widow at the time of her death, had the right to make a testamentary appointment of a tutor for her adopted child, to the exclusion of the child’s mother. Article 257 of the Civil Code says that the right of appointing a tutor by will belongs exclusively to the parent who* dies last. Does that apply to a foster parent when a natural parent survives?
The question might be decided as well one way as the other if it had not been already decided. But it has been decided in favor of the natural parent — just as the district judge decided in this case — and it ought to remain so decided unless the Legislature sees fit to change the law. In Tutorship of Ellen Wilson Upton, 16 La. Ann. 175, the question was presented exactly as it is here, except that in the Upton Case the natural parent who survived, and who had signed the act of adoption, was the father. The court ruled in his favor, saying:
“A party permitted by an act of the Legislature to adopt a minor, cannot appoint a testamentary tutor to such adopted minor to the exclusion of the natural father.”
In Succession of Forstall, 25 La. Ann. 430, the contest for the tutorship of the child, whose father was dead, was between a paternal uncle, who had adopted the child, and the child’s mother, who had consented to the adoption. The court ruled in favor of the mother, saying:
“Nothing is to be found in the statutes of this state relative to adoption, which, being construed with the various articles of the Civil Code on the subject of tutorship, inclines this court to believe that the Legislature, in permitting the adoption of children, had any intention to abridge the right of a natural tutor to the personal care and control of his minor child or to the administration of the child’s property.”
The ruling which we have just quoted goes further in the way of favoring a natural parent who has given up his or her child in adoption than we have to go to affirm the judgment in this case.
In Succession of Haley, 49 La. Ann. 709, 22 South. 251, the court referred to the rulings in Tutorship of Upton and in Succession of Forstall as if they were obsolete. It was said that subsequent legislation in respect to adoption had gone forward, and that recent adjudged eases would indicate that the court then regarded the authority of adopting parents “as having been broadened by that legislation beyond what it was.” Act 31 of 1872, under which Marion Pelham was adopted, does not seem to have broadened the authority of adopting parents beyond what it was. The act merely declares that any person over the age of 21 years shall have the right to adopt, by a notarial act, any person under the age of 21 years, provided that, if either or both of the child’s parents be living, or if the child has a tutor, the parent or parents, or tutor, as the case may be, shall consent to the adoption, and as evidence thereof shall sign the act. In Succession of Haley, the testamentary executor — Who had been appointed also testamentary tutor of the adopted child, but had not yet qualified — -was allowed to appeal from an ex parte order confirming the mother of the child as natural tutrix. *1026 .The order appealed from was annulled, and the rights of all parties with regard to the tutorship of the child were set at large. The reason for the ruling was that the court thought that the mother’s application for confirmation as natural tutrix, under the circumstances, should have been served upon the executor, who had been appointed testamentary tutor. The court, in terms, refused to say whether the mother’s having given her child over in adoption had conferred upon the foster parent the right to appoint a testamentary tutor for the child to the exclusion of the natural mother, dlie decision therefore cannot be regarded as having overruled the decision in Tutorship of Ellen Wilson Upton, or the decision in Succession of For stall.
In the case of Tutorship of Julia Eleanor Brown, 120 La. 50, 44 South. 919, both parents of the child were dead, and the contest for the tutorship was between a paternal aunt, who had adopted the child, and the maternal grandmother of the child. The court ruled in favor of the grandmother, because, by the very terms of article 266 of the Civil Code, the grandmother was the only woman who had the right to claim the tutorship by effect of the law, and because by the terms also of article 302—before the enactment of Act No. 34 of 1921—women were declared ineligible for the tutorship of minor children, except that a grandmother could claim the tutorship of her grandchildren. The decision in the Brown Case therefore is not appropriate to the case before us.
[1] Our conclusion is that the judgment appointing Mrs. Fannie Krebs Pelham tutrix of her child should be affirmed.
[2] We approve also the order which Mrs. Fannie Krebs Pelham has appealed from, requiring her to give bond for the faithful fulfillment of her trust. If she had been confirmed as the natural tutrix of the child, she would not have had to give bond. But she acknowledged that she had forfeited her right to be confirmed as natural tutrix, and she only asked to be appointed tutrix under bond. Perhaps she would not have conceded that her marrying a second time had had the effect of forfeiting her right to be confirmed as natural tutrix of her child if she had thought of the proposition announced in the case of Tutorship of Rhymes, 153 La. 639, 96 South. 501, interpreting Act No. 34 of 1921. The decision was rendered after Mrs. Pelham had been appointed tutrix and had been required to give bond. The avowed purpose of Act No. 34 of 1921 was merely to give to women the same rights and privileges and to impose upon them the same duties and obligations that men have in the matter of holding office, including the civil functions of tutor, undertutor, administrator, executor, etc. The writer of this opinion would doubt very much, as an original proposition, that Act. No. 34 of 1921 should have the effect which was attributed to it in the case of Tutorship of Rhymes. The ruling was that, inasmuch as a widower was not required to call a family meeting to be retained in the tutorship of his child when he was about to be married again, therefore a widow should not have to call a family meeting to be retained in the tutorship of her child when she was about to be married again. The reason why a widow’s remarrying needed the visé of a family meeting to retain her in the tutorship of her children, was that her new husband would become the cotutor of her dead husband’s children. Rev. Civ. Code, art. 255. But there was no such reason for requiring a widower to call a family meeting to decide whether he should be retained in the tutorship of his children when he was about to marry again. It seems doubtful, therefore, as an original proposition, that Act No. 34 of 1921 was intended to have the effect of making the word “widower” mean also “widow,” “husband” *1028 mean “wife,” “father” mean “mother,” or “uncle” mean “aunt,” etc., under any and ali circumstances. But the decision in the case of Tutorship of Rhymes is not important in this case, because Mrs. Pelham did not ask to be confirmed as natural tutrix of her child, and was not so confirmed. At her request she was appointed tutrix under the provisions of the Code requiring tutors to give bonds. Rev. Civ. Code, art. 318.
The judgment appointing Mrs. Fannie Krebs Pelham tutrix of her child, Marion Pelham, and the order requiring her to give bond as such, are affirmed. The court costs in this proceeding are to be paid out of the estate of the minor.
ROGERS, J., concurs in decree and in all of opinion, except wherein it comments upon case of Tutorship of Rhymes, 153 La. 639, 96 South. 501.