No. 8717.

Orleans Appeal.

**ACME BURLAP BAG CO. v. THE HARDIN BAG CO., INC.**

(January 5, 1925, Opinion and Decree.)

*(Syllabus by the Court.)*

1. **Louisiana Digest—Evidence—Par. 222.**

Verbal testimony is rightfully excluded when offered for the purpose of varying the clear and unambiguous terms of a contract of sale, which is evidenced by letters and telegrams admitted to have been exchanged between the parties.

2. **Louisiana Digest—Sales—Par. 116, 126.**

Where an offer to purchase merchandise, f. o. b. at point of shipment, is accepted unqualifiedly by the seller, there residing, and where the seller is authorized to send the goods to the buyer, delivery of the goods to a carrier, whether named or not by the buyer, is deemed delivery to the buyer. and the latter must bear such losses as may occur to the goods while in transit.

(Articles 2458 and 2460 of the Civil Code do not apply because this is a New York contract. Editor's note.)

3. **Louisiana Digest—Sales—Par. 126.**

In the absence of specific instructions, the seller is not obligated to insure for account of the buyer.

4. **Louisiana Digest — Reconvention—Par. 19, 20.**

A demand in reconvention based upon matters shown to have been already adjusted by compromise will be rejected.

Appeal from the Civil District Court for the Parish of Orleans, Div. "D", Hon. Porter Parker, Judge.

This is a suit for the balance of the purchase price of burlap bags bought in New York. There was a demand in reconvention.

There was judgment for plaintiff and defendant appealed.

Judgment affirmed.

Milling, Godchaux, Saal & Milling, attorneys for plaintiff and appellee.

Dart, Kernan & Dart, attorneys for defendant and appellant.

BELL, J. The appeal herein is taken from a judgment in favor of plaintiff for the amount prayed for and rejecting defendant's demands in reconvention.

By numerous telegrams and letters—and in no other manner—the parties to this suit contracted for the purchase, sale and shipment, f. o. b. New York, of one hundred and fifty thousand second-hand sugar and burlap feed bags for the total price of $14,375.00.

Plaintiff, a New York seller, sues defendant, a New Orleans buyer, for what it claims is a balance due on the above purchase price after total credits for the salvage on certain bags damaged while in transit and amounting to $2,950, and after further credit for cash payments of sight drafts, amounting to $10,781.25. These credits on account of the purchase price, above-stated, leaves a balance of $643.75, the amount herein claimed, and for which judgment, with 5 per cent interest from September 14, 1919, has been rendered. The account sued upon is fully set out in plaintiff's supplemental petition, as follows:

| | | |
|---|---|---|
| 100,000 feed bags at 10½c each | | $10,500.00 |
| 50,000 sugar bags at 7¾c each | | 3,875.00 |
| | | $14,375.00 |
| Less 18,500 damaged feed bags at 10½c each | 1,942.50 | |
| and 13,000 damaged sugar bags at 7¾c each | 1,007.50 | |
| | | 2,950.00 |
| | | $11,425.00 |
| Less cash paid on account | | 10,781.25 |
| | | $643.75 |

The only pleaded defense to this suit is in substance to the effect that the goods

were purchased subject to inspection after arrival in New Orleans, and that because of this condition the bags were at the risk of the seller, who must, therefore, bear all loss or damage incident to transportation and arising before delivery to, or acceptance by, defendant. Under this defense, it is further alleged by defendant that in order to procure possession of the undamaged portion of the shipment which it accepted after inspection at New Orleans, it was compelled by the carrier steamship company to pay the sum of $718.75, as general average charges bearing on the whole shipment. It is finally averred by defendant that it has paid to plaintiff the sum of $500 in full compromise and settlement of all differences between the parties; that nothing is, therefore, due to defendant, but that should the compromise be held invalid for any reason, then allowances for this amount paid in compromise, to-wit: $500, together with the payment of general average charges, to-wit: $718.75, or a total credit of $1,218.75 should be given defendant, as against the balance of $643.75 claimed by plaintiff. To the extent of this difference, to-wit: $575, defendant and appellant, assuming the position of plaintiff in reconvention, has prayed unsuccessfully for a judgment against plaintiff in the main action. Upon the issues established by the pleadings, the case resolves itself into the simple, but important, question of fact; what differences were settled by the compromise?

The original contract, as well as the agreement of compromise, is evidenced entirely by correspondence and telegrams between the parties. It is only from these sources that the intention of the parties can be determined. Exclusion by the trial court of any testimony tending to vary these agreements was entirely correct. The contract sued upon having been admitted by defendant in its answer and the com-

promise arising therefrom having been pleaded by defendant, in complete discharge of all liability, defendant was precluded from pleading or from attempting to prove any condition at variance with or which would in any wise tend to amplify the expressed agreements found in the letters and telegrams. It is plain from these documents, especially Exhibits 30 to 37, that defendant's offer and plaintiff's acceptance of the compromise, was only in respect to the differences between the parties as to which of them should bear the losses incident to the marine disaster, and that such losses consisted of the general average charges, as well as the actual loss or damage to about sixty-three bales of bags, forming part of the entire shipment. It is but necessary to quote in part from four of the innumerable letters found in the record.

On September 13, 1919, defendant wrote plaintiff in part as follows:

"9/13/19.

Acme Burlap Bag Co.,
89 Waterbury St.,
Brooklyn, N. Y.
In re: Bags ex SS. 'Hamilton'.
Gentlemen:

\* \* \*

"For your information the Southern Pacific Steamship Co. called on us here for 5% of the total amount of your invoices as part of the general average fund and we have paid same to them amounting to $718.75. So far only 200 bales of the entire shipment of 300 have arrived here in New Orleans and we understand there are 37 bales on the SS. 'Creole' due here tonight.

Very truly yours,
J. W. HOHENSTEIN,
JWH:P                          Vice-President."

On January 20, 1920, after innumerable letters and telegrams had been exchanged, defendant wrote plaintiff as follows:

"1/20/20.

Acme Burlap Bag Co.,
89 Waterbury St.,
Brooklyn, N. Y.
Gentlemen:
You will please pardon our delay in an-

swering your tracer of January 8th, requesting a definite statement of our position regarding damaged bags shipped on the SS. Hamilton.

The reason for this delay has been due to our having requested our attorneys to again rehearse all of the facts in connection with this case. They notified us yesterday that they have found nothing to change their original opinion—that we had a very good defendable case and they are not willing for us to accept your proposition for an arbitration.

As stated in a previous letter, in the event you should decide to enter suit against us to determine who is right or wrong in this matter, we would of course have to defend ourselves, which would cost us attorneys' fees, amounting to say four or five hundred dollars. We would prefer to have you get this money than the lawyer.

Our business relations with you good people have been altogether pleasant, and we still cling to the hope that this very regrettable occurrence may prove susceptible of adjustment outside the courts.

Yours very truly,
J. W. HOHENSTEIN,
JWH:EB                    Vice-President."

On January 24, 1920, plaintiff replied to defendant's letter of January 20th, as follows:

"1/24/20.
Hardin Bag Co.,
    New Orleans, La.
Gentlemen:

We have your letter of Jan. 20th further referring to the damaged bags on the Steamship Hamilton.

Although we feel that you are entirely liable, and we feel that we have shown you good reasons for the liability being with you, we have decided to accept your offer of five hundred dollars ($500.00) in settlement and if you will let us have your check at once for this amount we will close the matter.

While writing we want to say that we are surprised that you have not sent your check to balance our invoices of Nov. 18th and Dec. 2nd, as per statement enclosed. These bills are very much past due, especially the first item, and we do not understand why you have not sent your check for the $643.75 balance due as per our letter of Dec. 18th.

Will you please let us have your check, gentlemen, for the $643.75 and for the $500.00 in settlement of the dispute and for the balance due on our invoices of November 18th and December 2nd?

Respectfully,
ACME BURLAP BAG CO.,
JJW:RR.                    J. J. Walsh, Secy."

The evidence shows that the general average charges were paid by defendant on September 9, 1919, and that it notified plaintiff to that effect on September 13, 1919. It follows, therefore, that this item, as well as the other items of losses arising from the marine disaster, are bound to have been included within the subject matters intended by the parties to be wholly settled by the compromise payment of $500.00, which payment was sent by defendant to plaintiff on March 16, 1920. Under this appreciation of the intention of the parties, there could have been no other judgment than that which is now before us for review.

The learned trial judge has rendered no written reasons for judgment, but his rightful rejection of all verbal testimony tending to vary the written evidence of a clear and unambiguous contract, justify our belief that his judicial conclusions could only have been such as now impel our disapproval of the contention urged by defendant.

Defendant contends that the goods at the time of the marine disaster were at the risk of the seller. In support of this contention it is argued that while there was no agreement as to the mode or time of shipment, the seller should have observed the well established custom sanctified by the Uniform Sales Act, of insuring goods when shipped by sea and of notifying the buyer of his intention of adopting this method of shipment; that failure so to do on the part of plaintiff placed the goods at the shipper's risk. Defendant's reliance upon the Uniform Sales Act, particularly paragraph (3) of Sec. 46, is an admission of what appears from the record to be an

indisputable fact, that is, that the contract under consideration is a New York contract and not a Louisiana contract. The latter state has not adopted this Act. There is nothing before us to show that in the absence of specific agreement as to the method of shipment that the Act has imposed upon the seller the knowledge that he should, or the duty that he must, insure. We see no application of Sec. 46, paragraph (3) of the Act to the contract in question, but on the contrary other provisions of the Act, taken as the law of this case, particularly Sec. 19, Rules 1 and 5, and Sec. 46, Par. (1), are plainly against defendant's contention.

Sec. 19. Rules for Ascertaining Intention:

"Unless a different intention appears, the following are rules for ascertaining the intention of the parties as to the time at which the property in the case is to pass to the buyer:

"Rule 1. Where there is an unconditional contract to sell specific goods in a deliverable state, the property in the case passes to the buyer when the contract is made, and it is immaterial whether the time of payment, or the time of delivery, or both, is postponed.

"Rule 5. If a contract to sell requires the seller to deliver the goods to the buyer, or at a particular place, or to pay the freight or cost of transportation to the buyer, or to a particular place, the property does not pass until the goods have been delivered to the buyer or reach the place agreed upon."

It is evident from the facts of this case, as already stated, that Rule 1, not Rule 5, must here apply. There can be no doubt from the terms of delivery, that is, "f. o. b. New York", that the plaintiff was to send or transmit by carrier and not to deliver directly, the bags to defendant. This being so, Sec. 46, Par. (1) of the Act applies. Its provisions are as follows:

"Sec. 46. Delivery to Carrier on Behalf of the Buyer.

"(1) Where, in pursuance of a contract to sell or a sale, the seller is authorized or required to send the goods to the buyer, delivery of the goods to a carrier, whether named by the buyer or not, for the purpose of transmission to the buyer, is deemed to be a delivery of the goods to the buyer, except in the cases provided for in Section 19, Rule 5, or unless a contrary intent appears."

It follows from the foregoing, that from the moment of the delivery of the bags by plaintiff to the carrier, there was constructive, legal delivery to the defendant, with all attendant risks as to loss or damage (including general average charges) upon defendant as buyer.

Defendant's further contention that delivery was never completed because of its right to inspect, count and approve the bags at New Orleans, cannot be considered, for the reason that no such right was reserved in the contract itself, nor, as heretofore noted, is proof of such right permissible.

The provisions of Arts. 2458 and 2460 of the Revised Civil Code of Louisiana have no application to the New York contract in question. Defendant's offer to purchase the sugar bags was finally accepted by plaintiff at New York, as per plaintiff's telegram of June 27, 1919, and the balance of the shipment was purchased in New York for account of defendant by its New York agents, Hare & Blenhien, on July 19, 1919.

We are unable to conclude that because the contract of sale concerning both kinds of bags sold, provided, as terms of payment, that sight drafts for 75%, rather than for the total purchase price, should go forward, these facts carry any implication that the right of inspection was a condition precedent to delivery or acceptance, and that before the happening of this condition, the goods were at the seller's risk. No greater authority to the contrary view can be cited than that of Williston on Sales, Second Edition, page 602, which reads:

"As it is a necessary implication in F. O.

B. contracts that the buyer is to be at all expense in regard to the goods after the time when they are delivered free on board, the presumption follows that the property passes to the buyer at that time, and not before, though the goods are brought to the point of shipment and are ready for loading; and the further presumption follows that the place where the goods are to be delivered F. O. B. is the place of delivery to the buyer. The general rule, however, must be qualified by two possibilities; the first relating to the form of the bill of lading and the second to the other terms of contract. It is common where sales are made F. O. B. the point of shipment for the seller to take the bill of lading to his own order and send it forward with his indorsement accompanied with a draft for the price. Under mercantile usage, confirmed by the Sales Act and by statutes governing bills of lading, the property in the goods is thus reserved by the seller until the payment of the price. But it should be observed, and sometimes has not been in the United States, that the seller's retention of ownership is merely for the purpose of security, and the beneficial interest as well as the risk of loss is upon the buyer. This is well settled in England, and Section 22 of the Sales Act should remove any doubt where that statute has been enacted that the rule is the same in America; but there is cause to fear that some courts may still misconstrue the situation."

In the Uniform Sales Act, Sec. 22, the doctrine as to Risk of Loss is stated as follows:

"22. Risk of Loss. Unless otherwise agreed, the goods remain at the seller's risk until the property therein is transferred to the buyer, but when the property therein is transferred to the buyer, the goods are at the buyer's risk whether delivery has been made or not, except that—

"(a) Where delivery of the goods has been made to the buyer, or to a bailee for the buyer, in pursuance of the contract and the property in the goods has been retained by the seller merely to secure performance by the buyer of his obligations under the contract, the goods are at the buyer's risk from the time of such delivery."

We find no error in the judgment of the trial court. It should be affirmed.

It is, therefore, ordered that the judgment appealed from be and the same is hereby affirmed at defendant's costs in both courts.