## LYONS MILLING COMPANY v. CUSIMANO

---

(November 16, 1925, Opinion and Decree)

(December 14, 1925, Rehearing Refused)

(May 4, 1926, Decree by the Supreme Court. Reversed.)

---

*(Syllabus by the Court.)*

1. **Louisiana Digest—Sales—Par. 58.**

In a contract of sale, the term "F.O.B." used in connection with the point of shipment simply means that the transportation charges are to be paid by the buyer from that point. Such a term can in no manner be construed as a guarantee that the thing sold is to be milled or manufactured at that point.

2. **Louisiana Digest—Evidence—Par. 58, 60.**

The burden of proof is upon the buyer to establish the defects of which he complains. in the absence of such proof he must fail.

Appeal from the Civil District Court, Parish of Orleans, Division "C", Hon. E. K. Skinner, Judge.

Action by Lyons Milling Company against J. Cusimano.

There was judgment for defendant and plaintiff appealed.

Judgment reversed.

Hall, Monroe &. Lemann and Nicholas Callan, of New Orleans, attorneys for plaintiff, appellant.

U. Marinoni, Jr., of New Orleans, attorney for defendant, appellee.

BELL, J. This is a suit for damages ex contractu. The claim is for $460.56, representing the loss in the market value on a carload of "Telegram" flour, sold to defendant through plaintiff's agent, J. S. Waterman & Company, of New Orleans. The contract, in confirmation form, is dated "Lyons, Kansas, August 4, 1920", and is addressed by the plaintiff to defendant, in New Orleans, and reads, partly, as follows:

"We confirm sale to you by wire from J. S. Waterman & Company and have entered order for shipment of 310 barrels Telegram flour @ $11.10 basis 98-lb. Cottons per barrel F.O.B. Lyons, freight allowed, basis rate effective above date.

"Terms arrival draft.

"Time of shipment—Immediate.

\* \* \* \*

"It is understood that there are no conditions, representations or warranties, verbal or otherwise, and there shall be no assignment or cancellation of this contract, except as herein stated, and no agent or representative has authority to modify the printed terms of this contract."

The petition sets up the contract and alleges that upon arrival of the flour at New Orleans defendant refused, without lawful cause or justification, to accept the same, thus compelling plaintiff to sell the

flour on the open market, with resulting damages in the amount claimed.

The defendant answers by admitting the contract, and his purchase of the brand described. Denying that he breached the contract, he avers that the flour was not up to grade or suitable to his particular use in the manufacture of macaroni; that the shipment was not in accordance with the terms of the written contract, which called for flour to be milled at plaintiff's mill situated at Lyons, Kansas, whereas the flour was shipped, as shown by the waybill, from plaintiff's mill at Hudson, Kansas, a mill producing a different and inferior grade of flour, wholly unsuitable to defendant's purposes; that in this respect plaintiff violated the contract, and therefore defendant was justified in rejecting the flour. It is further alleged in the answer that after defendant had discovered, upon arrival of the flour, that it had not been shipped from the Lyons mill, plaintiff was immediately notified that if it would ship defendant a car of flour from Lyons up to the grade of the "Telegram" brand, defendant would accept the same, irrespective of the market. Defendant flatly denies that he violated the contract in any manner whatsoever.

There was judgment for defendant rejecting plaintiff's claim upon the following written reasons assigned by the trial court:

"Defendant purchased of plaintiff's agent 310 barrels of flour known as Telegram flour, from a mill of plaintiff, shipped from Lyons, Kansas. The defendant had used this kind of flour so shipped and found it satisfactory for the manufacturing of Italian paste. The 310 barrels arrived here shipped from Hudson, Kansas, and branded Telegram Flour. Defendant declined to receive the shipment not knowing the quality of the flour made in Hudson, though

he was willing to try a sample to see if it was suitable for Italian pastes. This was refused and the flour sold; causing the loss complained of. This suit is for that amount. I do not think defendant liable. He did what was proper when the flour arrived and his proffer was rejected. It subsequently developed that the flour shipped was inferior quality and unsuited to defendant's purpose."

The judge a quo seems to have predicated his judgment firstly upon a conclusion of law that defendant's offer to accept another shipment from Lyons instead of that from Hudson, Kansas, relieved him of all liability, if any there was, under the contract; secondly, upon a question of fact, that the flour shipped, that is, the "Telegram" brand, was subsequently shown to be of inferior quality and unsuited to defendant's purpose. Our appreciation of the law and the facts presented in this case leads us to a contrary opinion. There is no proof whatever in the record before us which shows that the "Telegram" flour involved in the contract sued upon was ever tested by defendant or anyone for him, or that it was found through any other source or method of investigation to be of an inferior grade than that bargained for. On the contrary, it appears that, after defendant had rejected the shipment, he made two distinct efforts to obtain from plaintiff permission to inspect and sample the flour. No such permission, however, was granted. As a proposition of law, we find that the plaintiff was, under the terms of the contract, entirely within its legal rights in withholding such permission. No such issue as to the right of inspection was made by the pleadings, and hence no evidence bearing on any attempt to inspect the shipment should have been admitted. The consignment was made to defendant upon the plain and customary provisions, "Terms

arrival draft". These words could have meant nothing else than that delivery by the carrier to the consignee of the shipment, or any part of it, could not be made for purpose of inspection or otherwise, until payment of the draft attached to the bill of lading. In the absence of specific agreement granting a right of inspection prior to acceptance of the shipment, defendant must be held to the uniform law applicable to contracts such as the one now under consideration. Acme Burlap Bag Co. vs. Hardin Bag Co., 1 La. App. 379.

"Under a contract providing for payment by sight draft against bill of lading, buyer is not entitled to inspection of the goods before payment; and such is true where, by agreement of the parties, the goods are placed in the hands of a bailee, to be held until the buyer makes payment in accordance with the contract." Broeck Tyre Co. vs. Rubber Trading Co., 217 S. W. 345, quoting:

5 Elliot on Contracts, par. 5058, p. 1204; Williston on Sales, par. 479, p. 839;

Thick vs. Detroit, 137 Mich. 708, 101 N. W. 64, 66;

Sawyer vs. Dean, 114 N. Y. 469, 21 N. E. 1012;

Trenton Rubber Co. vs. Small, 3 Pa. Sup. Ct. 8;

Plum vs. Hollaner & Sons Co., 130 N. Y. S., 147;

Southwestern Milling Co. vs. Niemeir, 131 N. Y. 830.

The only questions which could be considered on the issues established by the pleadings are:

First: Whether the contract was breached by plaintiff's shipment of "Telegram" flour from its Hudson rather than "Telegram" flour from its Lyons mill; and,

Second: Whether the flour, irrespective of its place of shipment, was up to the usual standard of flour sold by plaintiff and known to the trade, particularly to defendant, as "Telegram" flour.

That the carload lot consisted of "Telegram" flour and that the shipment was made from the Hudson mill are facts undisputed. There is no burden of proof on either litigant to establish these facts, nor could there be any justification in law for rejection of the flour, admittedly "Telegram" flour, simply because its shipment was from Hudson rather than Lyons, Kansas, shipment from either place not being shown as a fact affecting the contract price. It follows, therefore, that the quality or grade of the flour, that is, the second question for consideration, constitutes the principal issue here involved. The alleged defect or undergrade of the flour, having been pleaded as a defense, the burden to establish this fact is necessarily upon the defendant.

"The burden of proof is upon the buyer to establish the defects of which he complains. In the absence of such proof, he must fail." Fairchild Auto Co. vs. Reed, 12 Ct. of App. 351."

The evidence in this case, admitted over plaintiff's objection and offered by defendant to prove the defects in the flour, consist only of testimony showing that a previous shipment made by the plaintiff of a carload lot of "Rosebud" flour and consigned to other parties than the defendant, was found, upon test duly made, to be a grade of flour much below that of the brand known as "Telegram" flour, which plaintiff had, on a previous occasion, bought from the defendant and found to be entirely satisfactory for the purpose of manufacturing macaroni. Considerable

part of the record is made up of defects found in the "Rosebud" brand. This evidence was entirely immaterial to the issue involved in this case, and should have been excluded. Two witnesses who testified to the unsatisfactory grade of "Rosebud" flour were members of the John S. Waterman & Company, plaintiff's former agent at New Orleans. Both of these witnesses admitted, on cross-examination, that neither of them inspected or tested the "Telegram" flour shipped under the contracts here involved. There being no other testimony or proof offered on this subject, it is plain that the defendant has entirely failed to establish this point in its defense.

It is argued, on behalf of defendant, that the words found in the contract, reading "F.O.B. Lyons", was a covenant on the part of the plaintiff to ship to defendant only such flour as was milled by plaintiff, Lyons Mill, at Lyons, Kansas; that this provision in the contract caused defendant to believe that he was buying and would receive no other flour under the "Telegram" brand than flour which had been milled at the point mentioned, and that the breach of this vital condition of the contract on the part of plaintiff was a full justification for defendant's rejection of the shipment.

From our understanding of the common acceptation of the term "F.O.B.", as well as from the better and preponderating evidence found in the record concerning the trade acceptation of this term, it is impossible for us to conclude that the defendant could have believed that the term "F.O.B. Lyons" meant that the "Telegram" flour involved in the shipment should have been milled by and shipped only from the plaintiff's mill at Lyons, Kansas. There

is abundance of proof that the plaintiff had three mills in the State of Kansas; one at Lyons, one at Hudson, and one at Burton. The testimony of the president and general manager of the Lyons Milling Company is to the effect that "Telegram" brand of flour manufactured by this company was known among all millers as a ninety-five per cent grade of flour, and that it was made of dark, hard winter wheat, and made at all of the plaintiff's mills during the year 1920; that the term "F.O.B." used in respect to any given milling point merely had to do with the price-fixing of the flour, and in no manner related to its grade; that the flour furnished under the contract of August, 1920, and which was rejected by the defendant, was the same grade and brand as the grade sold the preceding season to the same defendant, except that it was manufactured from a later crop of wheat, being always, however, of the dark, hard winter wheat variety, and that all three of the mills manufactured and produced all the different grades and brands of flour that the Lyons Milling Company sold.

The head miller of the plaintiff company corroborates the testimony of the witness above mentioned, and further states that he was charged with the inspection and test of all flours made at all of the mills, and that the several brands manufactured by them was given to indicate a definite grade of flour for the brand mentioned, and that the "Telegram" brand was of a standard ninety-five per cent brand. This witness further swears that this brand of flour was sold to innumerable dealers, both bakers and manufacturers of macaroni, and found highly satisfactory, and that he is the only person who has ever superintended the making of "Telegram" flour, having been in the

employ of the company over seventeen years, since its organization, and that this particular brand has never been manufactured by anyone else, and that no shipments of this brand are ever made unless it meets the standard required for the particular case. He further states that the Lyons Milling Company does not manufacture a "Rosebud" brand of flour, and never has.

Fred A. Burns, general manager of the Consolidated Flour Mills Company, a competitor of the plaintiff company, called as a witness, testifies that his concern operates four mills at different places in the state of Kansas. Further testifying as to the custom observed in milling, selling and delivering flour from his several mills, this witness says:

"Q. Suppose a milling company accepts an order for the sale of its 'Telegram' brand of flour, which brand is manufactured both at Lyons and at Hudson, Kans., and the order contains the provision, 'F.O.B. Lyons', would it be in accordance with the custom of the trade to permit milling companies to make shipment of 'Telegram' brand from Hudson, where adjustment of freight is made on basis of shipment from Lyons, Kans.?
"A. Yes, sir. When a buyer buys a particular brand of flour, he does so for the purpose of getting the brand of flour which that brand stands for. It is of no consequence to the buyer where it comes from so long as he is furnished the article he agreed to purchase. 'F.O.B.' a given point is in the milling trade merely a price-fixing point, and is so understood by both the buyer and the seller so far as that has to do with any brand or grade of flour. For example, in my company we own and operate four different mills, one each located at Hutchinson, Newton, Winfield and Caldwell, Kans., and we sell a number of different brands of flour, all of the brands being registered and advertised by us exclusively. Each brand denotes a particular grade of flour. If we sell a given number of barrels of 'United'

(one of our registered brands) flour F.O.B. Hutchinson, Kans., where we have a mill, we feel entirely free and often do fill such orders from one of our other mills, either at Newton, Winnfield or Caldwell, Kans., for each of the four mills makes all of the different grades and brands of flour we manufacture. It is not considered requisite, in the flour-milling trade, to furnish a particular brand of flour from a particular mill. As I stated before, the brand and grade of flour is what is sold, and not the place of manufacture."

The above testimony is clearly corroborative of that already given by the operators of the Lyons mill.

R. D. Abrams, a local flour broker at New Orleans, but not a manufacturer, holds for defendant a view contrary to that above noted. This witness testifies in part as follows:

"Q. You are a competent railroad man?
"A. No, sir, I am a flour broker.
"Q. In the flour business, in making contracts for the sale of flour, what is the meaning of the initials F.O.B. on flour sales?
"A. When an intelligent flour buyer buys flour F.O.B. certain mills, it is understood that the flour is to originate at that point and be milled by the particular mill at that point."

A preponderance of evidence is against that of this local broker, as is also the weight of authority concerning the accepted meaning of the term "F.O.B.", as used in practically all lines of business.

In R. C. L., verbo "Sales", seq. 159, it is stated:

"The abbreviation 'F.O.B.' is frequently used in contracts of sale; some courts hold that evidence is admissible to show

that the letters stand for the words, 'free on board'; but, generally speaking, it is held that the courts will take judicial notice that such is the meaning, and it has been held that the abbreviation has acquired such a plain meaning as to preclude the admission of evidence of a local usage or contemporaneous oral understanding of the parties to explain its meaning. This abbreviation is considered as referring to qualifying the delivery, and it is generally considered to mean that the subject of the sale is to be loaded by the seller on the vehicle or conveyance for shipment without any expense on the part of the buyer. Where the provision is for delivery F.O.B. the point of shipment, the duty to pay the transportation charges is upon the buyer, but it is otherwise where the provision is F.O.B. point of destination."

We can find no justification for the rejection of the flour, the identical brand of which is shown to have been previously purchased and used by defendant with full satisfaction in his manufacture of macaroni. The J. S. Waterman Company, while formerly agents for the plaintiff company, expressed the opinion in a letter addressed to plaintiff, of date October 21, 1920, that defendant had taken a very arbitrary stand in rejecting the shipment here involved. We are inclined to the same view. The judgment should have gone for the plaintiff.

It is therefore ordered that the judgment herein appealed from be reversed and set aside.

It is further ordered, adjudged and decreed that there be judgment for plaintiff, Lyons Milling Company, and against defendant, Jacob Cusimano, in the full sum of four hundred and sixty dollars and fifty-six cents ($460.56), with legal interest thereon from judicial demand, and for costs in both courts.