No. 2763

Second Circuit

---

SMITH v. INTERURBAN TRANSPORTATION COMPANY

---

(Jan. 28, 1927.　Opinion and Decree.)
(Feb. 24, 1927.　Rehearing Refused.)

---

(*Syllabus by the Editor*)

1. **Louisiana　Digest — Automobiles — Par. 4 (a), 4 (b).**

One who drives an automobile onto a public highway from a private entrance must take proper precautions to see that no vehicle is approaching before crossing the highway.

2. **Louisiana　Digest — Automobiles — Par. 4, 4 (a).**

The driver of a motor bus is not negligent in driving to the left of the road in trying to avoid a collision with an automobile which had been negligently driven onto the road from a private entrance in front of the bus.

3. **Louisiana　Digest — Automobiles — Par. 4, 7 (c).**

The excessive rate of speed of a motor bus is not the proximate cause of the accident, where it is caused primarily and solely by the sudden appearance of an automobile upon the road at a point so close to the bus as to deprive the bus driver of the last clear chance to avoid a collision.

4. **Louisiana　Digest — Automobiles — Par. 4, 7.**

One who negligently drives an automobile from a little used private driveway onto a public highway so close to a bus that the bus driver can not avoid the accident, is guilty of the negligence which caused the accident.

Appeal from the Ninth Judicial District Court of Louisiana, Parish of Rapides. Hon. Leven L. Hooe, Judge.

Action by Peter D. Smith, et al., against Interurban Transportation Company, Inc.

There was judgment for plaintiffs and defendant appealed.

Judgment reversed.

Overton & Hunter, of Alexandria, attorneys for plaintiffs, appellees.

Hawthorn & Stafford; L. P. Beard, of Alexandria, attorneys for defendant, appellant.

ODOM, J.　Plaintiffs brought this suit to recover $5,477.00 damages resulting from a collision which took place on May 13, 1925, between a Ford touring car occupied and driven by Mrs. Smith and a pas-

senger bus owned and operated by the defendant company.

There was judgment in the lower court for plaintiffs for $753.20 and defendant appealed.

Plaintiffs answered the appeal and ask that the judgment be increased to the amount sued for.

## PLEADINGS

Plaintiffs allege that at about 2 o'clock p. m., on May 13, 1925, Mrs. Smith, wife of Peter D. Smith, and her two minor children, left the residence of Mrs. A. M. Wilks located on the Jefferson Highway just outside the limits of Alexandria, for the purpose of returning to their home in Alexandria; that they were riding in a Ford touring car; that the residence of said Mrs. Wilks is on the west side of said highway and that in order to reach the highway she drove her car down a private driveway leading from the residence to and intersecting the highway at right angles; that she drove onto said highway, which at the time was open and unobstructed, and crossed over to the opposite side in order to get on the right-hand side going to Alexandria, the highway running north and south; that after she crossed the highway she turned to the left and straightened her car so as to proceed on north, and while on the proper side of the road, the bus of defendant company carelessly and negligently, and while going at an excessive rate of speed, left its side of the road, which was the right-hand side going south, turned to the left and ran into her car without slacking its speed or giving any warning whatever of its approach; and that before entering the highway she stopped and looked and saw no vehicle approaching, and that she was entirely free from fault or negligence.

The defendant, in answer, admitted the collision, but denied liability on the ground that the collision was due solely to the negligence of Mrs. Smith, the driver of the car, in going upon the highway at a rapid rate of speed without stopping and looking and with utter disregard of the laws of the road.

## OPINION

The collision took place just south of Alexandria on the Jefferson Highway. Jefferson Highway runs north and south at that place, is gravelled and is much used for vehicular traffic.

On that day Mrs. Smith with her two small children had visited in the home of a kinsman, A. M. Wilks, whose residence is situated about 200 feet west of the highway. At about 2 o'clock p. m., she with her children, started in a Ford car back to her home in Alexandria. She drove her car east, down the private driveway from the Wilks' residence to the highway. On the west side of the highway and between it and the Wilks' property there is a ditch some three or four feet wide over which there is a bridge. Mrs. Smith says that when she reached the bridge and before entering the road, she stopped her car and looked both ways and saw no vehicle approaching. However, she modified her testimony to the extent of saying that she thought she saw a vehicle of some kind coming down the road but that it appeared to be so far away, some four or five hundred feet, that she thought she had time to cross the highway, turn to the left and get on her side of the road.

She alleged and testified that she was going very slowly and carefully and that she had actually crossed over to the opposite side of the road and was proceeding north toward Alexandria on the right-hand

side when the driver of defendant's bus, for some reason, left his side of the road, turned to the left (the bus was going north) and struck her car, which was on the proper side of the road.

As stated, the defendant's bus was going south. It was on the right-hand or west side of the road and was going at twenty-eight to thirty miles an hour. Mrs. Smith went onto the highway from that side. The testimony is clear that at a distance of about sixty feet north of the intersection of the driveway leading from the Wilks' residence to the highway where the collision took place, the driver of the bus swerved it to the left and that by the time it reached Mrs. Smith's car it was to the left of the center of the road.

The right front fender of the bus struck the left front fender of the Ford car and knocked it around, some of the witnesses testifying that the front end of the Ford car was toward the south after the collision. The bus passed on the east side of the car and ran into the ditch on that side of the road and stopped some thirty feet south of the point where the collision occurred.

The driver of the bus explains his movements in this way: He says that Mrs. Smith drove onto the road unexpectedly to him from the side on which he was driving; that he first saw her car when it reached the side of the road; that she was then moving toward the road and that he was then only about sixty feet from her car and could not stop the bus, which weighed about 6500 pounds, in time to avoid the collision; that it occurred to him that the best course for him to pursue was to turn to the left-hand side of the road and if possible run around the front end of the car, that if he ran straight ahead he would hit the car broadside, and

that an emergency existed and he used his best judgment.

His testimony in the main is corroborated by that of all the passengers on the bus.

Under such conditions he unquestionably pursued the proper course.

But, according to plaintiffs' theory of the case, the emergency was brought about by the fault and negligence of the driver of the bus in proceeding down the highway at an excessive rate of speed without looking ahead.

We do not think so.

The collision and resulting injury were caused by the carelessness and negligence of Mrs. Smith in driving her car upon the highway from a private side entrance without taking the proper precautions.

Mrs. Smith says she stopped and looked. The testimony is conflicting on the point as to whether she stopped. She says she looked both ways. But in view of the undisputed testimony as to how the collision occurred the conclusion is inevitable that she either did not look at all or that she looked without observing, or else she observed the approach af the oncoming bus and proceeded onto the road under the mistaken conclusion as to its distance from her, or that she proceeded in utter disregard of her own safety.

The accident occurred in broad daylight. From the point where she says she stopped and looked she had a clear and unobstructed view of the road in the direction from which the bus was coming for five or six hundred feet. If she looked she must have seen the approaching vehicle; there was nothing to keep her from seeing it. If she did not see it it was her fault. Her testimony that she stopped and looked and saw no vehicle avails her nothing, be-

cause the uncontradicted facts are that at the time she reached the bridge on the side of the road from where she says she stopped and looked the bus was coming down the open road in plain view.

In the course of the examination Mrs. Smith finally said that she did see what she took to be a vehicle coming down the road but that it appeared to be something like four or five hundred feet from her and she thought she had ample time in which to get across the road over to the opposite side.

If she did in fact look and see the bus coming and overestimated the distance, that was her misfortune and not the fault of the driver of the bus. If she did see the bus, she was unquestionably mistaken as to its distance from her; for if it had been as far from her as she says it was it would not have reached her before she crossed the road.

Counsel for plaintiff argue that the driver of the bus was not keeping a lookout as he should and that if he had he could have seen Mrs. Smith's car in time to stop before he got to the point of the collision. In fact, counsel argue that there was nothing to prevent the bus driver from seeing the Ford car coming down the driveway from the Wilks residence to the highway.

The testimony is very conflicting on that point.

A. M. Wilks, Mr. Murphy, A. D. Morris, P. J. Carbo, A. M. Andries, Peter Andries and Mr. Smith, seven in number, all sworn for plaintiff, testified that there was no obstruction on that side of the road and that the hedge had been removed previous to the accident.

Mr. Fleming, Mrs. Fleming, W. C. Davis, Mrs. W. C. Davis, E. E. Pringle, M. W. Walker and Mr. Hollier, the driver of the bus, seven in number, all sworn for defendant, testified just as positively that the hedge was from twelve to fifteen feet high at the time and completely obstructed the view and that the hedge was not removed until after the accident.

Each set of witnesses made out a case on that point for the respective sides. These were all local people and were probably interested in the outcome of the suit. That is the only way we can account for the fact that they so completely contradicted each other.

But there were two other witnesses called for defendant who live in Baton Rouge and who were probably not influenced by local sentiment. These were Mr. E. L. Erickson and Mrs. R. S. Simon. They were both passengers on the bus at the time. Their testimony was taken in Baton Rouge.

Mr. Erickson recalled the hedge but did not know how high it was. Mrs. Simon said it was high enough to completely obstruct the view of the Ford car as it came out.

These witnesses had ample opportunity to observe the movements of the bus and Mrs. Smith's car.

Our conclusion, therefore, upon this point is that the hedge obstructed the view of the Ford car as it came out from the Wilks residence.

The testimony is also very conflicting as to whether Mrs. Smith stopped and looked before driving onto the highway.

But Mrs. Simon was sitting on the second seat from the front and was looking ahead. She says Mrs. Smith did not stop when she got to the road and did not seem to be looking, and she does not think Mrs. Smith ever saw the bus.

. Mr. Erickson says the Ford was just approaching the road when he looked up and saw it and it was moving at the time and that the collision took place about the center of the road at a point opposite the bridge.

We give great weight to the testimony of these two witnesses, for, as said, the testimony of the other witnesses is so conflicting that it is impossible to draw any conclusion as to what really happened from what they say.

Counsel next contend that it was gross negligence for the driver of the bus to turn to the left; that if he had kept on his side of the road the collision would not have occurred.

The testimony of all the passengers on the bus is to the effect that the collision under the circumstances was inevitable.

Mr. Erickson who, as stated, was apparently without interest, said that the driver of the bus did everything possible to avoid the accident, and that if he had proceeded straight ahead, as plaintiffs say he should, he would have struck the Ford car broadside.

The general rule is that the driver of an automobile should keep to the right, but the rule does not apply in cases where the driver is confronted with an emergency. He may lawfully leave his side of the road to avoid striking another car which suddenly and unexpectedly drives onto the road from his side.

The bus was on the main highway and had the right of way. Mrs. Smith drove onto the road from a side entrance at a point so close in front of the bus that the driver could not stop before reaching her car. In the emergency, the driver of the bus used his best judgment and swerved to the left in order to avoid the collision. As it turned out, his turning to the left probably saved the lives of the occupants of the Ford car. But even if it be said that he could have avoided the collision by proceeding straight ahead on the right-hand side of the road (we think he could not) he cannot be held responsible for an error in judgment under the circumstances.

Lastly, counsel suggest that the bus was traveling at an excessive rate of speed, and they cite Act 120 of 1921, which provides that no passenger motor transfer having a passenger capacity of more than seven shall exceed a speed of 25 miles an hour except by special permission of the Highway Commission. Said act, in that respect, is unconstitutional. State vs. Carter, 159 La. 121, 105 So. 247.

But the excessive rate of speed was not the proximate cause of the accident. The accident was caused primarily and solely, we think, by Mrs. Smith's sudden appearance upon the road at a point so close that the driver of the bus was deprived of the last clear chance to avoid the injury.

The driver of a vehicle on a highway has no right to recklessly proceed without keeping a lookout ahead and without any regard whatever for the safety of those who may enter the highway from the side. He must drive cautiously at all times.

But the testimony in this case does not warrant a holding that the driver of the bus was guilty of any imprudence. This was not a public crossing or intersection. Mrs. Smith came onto the road over a little used private driveway and her advent onto the road was so sudden and so close that the bus driver could not avoid the accident.

The following cases, we think, amply support our holding:

Collier vs. Varino, 153 La. 635, 96 So. 500.

Jacobs vs. Jacobs, 141 La. 274, 74 So. 992.

Roder vs. Legendre, 147 La. 295, 84 So. 787.

Marston vs. Shreveport Traction Co., 140 La. 18, 72 So. 794.

Gibbons vs. Terminal Co., 1 La. App. 379.

Norwich Union Indemnity Co. vs. Cohen, 1 La. App. 520.

Moore vs. Liddell, 155 La. 1018, 99 So. 857.

Lester vs. Roach, 155 La. 947, 99 So. 707.

Landrenau vs. Chapman, 4 La. App. 402.

For the reasons assigned, it is therefore ordered, adjudged and decreed that the judgment appealed from .be reversed and avoided and plaintiffs' suit dismissed at their cost.