No. 830

First Circuit

NEWSTADT v. MOTOR FREIGHT LINES, INC.

(June 30, 1931. Opinion and Decree.)
(October 7, 1931. Rehearing Refused.)

George J. Ginsberg, of Alexandria, attorney for plaintiff, appellee.

C. A. Peyronnin, of New Orleans, attorney for defendant, appellant.

MOUTON, J.   Near Hopevilla, parish of Ascension, in July, 1929, plaintiff suffered personal injuries and damages to an auto he was driving, for which he is claiming $10,000 damages in this suit from defendant company.   He recovered judgment against defendant for $2,500, from which this appeal is taken.

The Port Vincent road runs into the Jefferson Highway near Hopevilla.   At the junction or intersection of these two roads a collision occurred between a truck with a trailer thereto attached, which Benton, an employee of defendant company, was driving, and an Oldsmobile plaintiff was driving.   The truck was going southward on the Jefferson Highway while the auto was moving northward on the Port Vincent road.   The accident happened at about the noon hour on a bright day.

There is about equal traffic on the Jefferson Highway and the Port Vincent road, the latter being kept up by the state highway department.   The Port Vincent road was therefore not a private road or drive which under section 21, Act No. 296 of 1928, p. 628, would have given the right of way to vehicles traveling on the Jefferson Highway.

Much testimony was taken in reference to a stop sign at or near the entrance of the Port Vincent road into the Jefferson Highway.   The proof on that subject fails to show that such a sign existed at the time of the accident.   Besides, the evidence shows that plaintiff, before reaching the highway had slowed down his speed from about 25 miles an hour to 15.

Easterly, of the Louisiana state highway police department, testified that, if the rules are followed by drivers, the intersection is large enough to handle traffic, and, in illustration of his idea, said, in referring to the intersection, "you could turn a freight train in there."

Benton, driver of the truck, and plaintiff, of the auto, both saw each other before entering the intersection, and there is no proof showing which entered first. They were both familiar with the locality; and most probably got into the intersection knowing that there was ample room for them to pass each other in safety, and no doubt were correct in that respect if they "followed the rules," as was said by the traffic officer, Easterly.

The solution of this case falls under section 18 of Act No. 296 of 1928, which reads as follows:

"Except as otherwise provided in this section, the driver of a vehicle intending to turn to the right at an intersection shall approach such intersection in the lane for traffic nearest to the right-hand side of the highway, and in turning shall keep as closely as practicable to the right-hand curb or edge of the highway, and when intending to turn to the left shall approach such intersection in the lane for traffic to the right of and nearest the center line of the highway and in turning shall pass beyond the center of the intersection, passing as closely as practicable to the right thereof before turning such vehicle to the left."

C. W. Brown, a disinterested witness, saw the collision. His testimony is that the truck which was going south from Baton Rouge entered the intersection about the center of the Jefferson Highway, and wanted to turn into the Port Vincent road, that it was pulled to the right, leaving the trailer at an angle "cross ways the road." He says plaintiff, who was coming northward in the intersection from the Port Vincent road, found his way blocked by the truck, and could not possibly make a turn to his right to get across the intersection.

Louis Moore, another disinterested witness, who also saw the accident, says, when plaintiff found himself in that predicament, he tried to pass on the left of the truck, that the truck "cut to the right," and that plaintiff had to whip back to his right to escape the crash, and, when he tried to do that, the truck struck the rear of plaintiff's car.

Plaintiff testifies that the truck was coming on its left side of the road, and that, to avoid the collision with the trailer that was blocking the intersection on his right, he made a turn to his left to avoid the collision, and that at the same time the truck attempted to go to its right side, which resulted in the impact. His testimony is in harmony on this point with the evidence of the two disinterested witnesses to whom we have hereinabove referred.

The record shows that plaintiff, as he approached the intersection, slackened his speed to about 15 miles an hour, and in turning at the intersection kept closely to the right-hand curb or edge of the highway, as it was incumbent upon him to do under the provisions of section 18, Act No. 296 of 1928.

It is admitted by Benton, driver of the truck, that he intended to turn into the Port Vincent road on his way to New Orleans. In order to make that turn, he should have kept to his right, and should have continued in that direction beyond the center of the intersection before "turning his vehicle to the left," as is required in such cases by section 18 of that act. Instead of following that course, as required by that statute and by the dictates of com-

mon prudence, he got on his left side of the intersection, blocked the line of travel to which plaintiff was entitled, and then suddenly darted to his right, and in that manner caused the collision.

Two or three witnesses testified that Benton was traveling in the truck at an excessive rate of speed. The fact is, that the truck came to a stop at a distance exceeding 100 yards from the point of collision.

One of the eyewitnesses, C. W. Brown, in testifying about the speed Benton was driving, said that, even if plaintiff had stopped his auto, there would, however, have been an accident, because the truck "couldn't have stopped."

Plaintiff, as we have before stated, was edging along the highway in making the intersection, and was following the course directed by the section of the statute, above cited, providing for the regulation of the movement of autos or vehicles in such instances. Plaintiff is not therefore chargeable with negligence in the management of his auto at that time.

Not so with Benton, employee of defendant company, who was clearly at fault in blocking the passage of plaintiff's auto, as above explained.

It is true that plaintiff, when he found his way blocked, swerved his auto to his left, and in attempting to come back to his right the collision occurred. His swerving to his left was, however, brought about by the negligence of defendant's employee. Being thus confronted suddenly with the presence of the truck in his path, plaintiff was placed in a dangerous position, and in attempting to extricate himself from such a perilous situation, even if he failed to exercise the best judgment, he is not

chargeable with contributory negligence. Pope v. Locascio, 13 La. App. 304, 126 So. 727, 729; Smith v. Interurban Transp. Co., 5 La. App. 704; Kennedy v. Opdenweyer, 11 La. App. 532, 121 So. 636, 123 So. 906.

Defendant was at fault, and was properly held liable in damages.

### AMOUNT

Immediately after the accident plaintiff, unassisted, walked to the truck, and was engaged for a while in a conversation about the accident with the occupants of the truck.

His face was bleeding from cuts on his head, on one ear, and back of it. A piece of his ear was cut off, but, from his answers to the questions put to him on that subject, it seems that the cut resulted in a notch, dint, or dent. The disfigurement of the ear must have been rather slight. He say his friends some time "kid me about this cut on my ear," and that even his wife indulges at times in these allusions. All of that, he says, causes him some embarrassment. He suffered injury to his legs, causing pain, he says, when the cold weather sets in, and he also limps in his left leg. He was in the hospital one month as a result of the accident, and no doubt suffered some mental anguish and physical pains.

He testified that for the repairs to his damaged auto he paid $234.75, and that he paid $25 to have his car taken from the scene of the wreck to Baton Rouge; that his bill at the hospital was $20, which he had also to pay, making a total for these items of $279.75. There is no proof to the contrary.

The court allowed him judgment for $2,500. The allowance to plaintiff for personal injury should not be over $1,500, to

which must be added $279.75 for the amounts above mentioned.

It is therefore ordered, adjudged, and decreed that the judgment below granting damages to plaintiff be amended, and that the amount allowed be, and is hereby, reduced to a total of $1,779.75; and, as thus amended, the judgment be affirmed.