LANDRY<br>v.<br>BLANCHARD.

Privileges being *stricti juris,* as declared by article 3152 of the Civil Code, the party claiming a privilege must point to the express law which gives him such right of preference on account of the nature of the debt.

The contract between *Gleason* and *Descuir* possesses some analogy to that for the delivery of freight; yet it is distinguishable in this, *Descuir* was not a common carrier, and he was not the owner of the logs or of a craft which transported the merchandise.

It has also some analogy to that of the seaman who has a privilege under the maritime law for his wages. But it is evident that the contract between *Descuir* and *Gleason* cannot be classed with any one of these contracts, and we are not aware of any law, neither has any been cited, which confers upon him a privilege for his wages. See 17 L. R. 161; 1 Rob. 558.

It is, therefore, ordered, adjudged and decreed by the Court, that the judgment of the lower Court be avoided and reversed, and that the defendants be perpetually injoined from selling said raft of cypress trees described in the plaintiff's petition, and that the possession thereof be restored to the plaintiff; and it is further ordered, that the defendants pay the costs of both Courts.

---

IN THE MATTER OF THE TUTORSHIP OF ELLEN WILSON UPTON—ON OPPOSITION OF WM. M. WILSON.

A party permitted by an Act of the Legislature to adopt a minor, cannot appoint a testamentary tutor to such adopted minor to the exclusion of the natural father.

APPEAL from the District Court of the Parish of Tensas, *Farrar,* J.
T. P. *Farrar,* for appellant. *Snyder & Lewis,* for appellees.

DUFFEL, J. This case presents but one point of law, which is: can an adopter appoint a testamentary tutor to the adopted minor, to the exclusion of the natural father?

The facts are briefly as follows: By an Act of the Legislature, approved March 15th 1852, *John Upton,* and his wife, *Mary Ballingat Upton,* were authorized to adopt by public act, the minor, *Ellen Wilson. John Upton* died shortly after without having passed the act, and afterward his widow executed the act of adoption, and became the tutrix of *Ellen* by the consent of the father. *Mary Ballingat* and *William M. Wilson,* the father of the minor, *Ellen,* subsequently intermarried, and were, after the marriage, separated in property by judgment. The mother by adoption, having made her will in favor of her adopted daughter, and named *Samuel W. Dorsey* testamentary tutor, died. The natural father of *Ellen Wilson Upton,* now resists the application of *S. W. Dorsey,* for the tutorship under the will, of his child *Ellen,* and claims the same as surviving father.

The District Judge conferred the tutorship on the testamentary tutor, and the opponent appealed.

We are not called upon to decide if a father can, *in any case,* be excused from the tutorship of his child; for whatever may have been the legal effect of the

renunciation made by the opponent, in favor of the mother by adoption, and her appointment as tutrix in consequence of said renunciation, the death of the latter, to say the least, has reinstated the former in all his rights.   Hence his exclusion *now* from the tutorship, will depend either, on the true intent of the above stated Act of the Legislature, or on the absolute right of an adopter to appoint, by will, a tutor to the adopted ; as under the code, the tutorship of a minor child belongs of right to the surviving mother or father, Art. 268, and the right of appointing a tutor by will, belongs *exclusively* to the surviving father or mother, Arts. 275 and 281.

It can not be said that the act of the Legislature authorising the adoption in this case, took away, or diminished, in expressed terms or by implication, any of the paternal prerogatives conferred by the Civil Code, Art. 234, 239, 268, 327.

Adoption is of the oldest antiquity ; it was known among the. Hebrews, the Assyrians, and the Egyptians ; and formed a part of the Roman laws.   It was introduced in Louisiana by Spain, but was expressly abolished by the Code of 1808, p. 50, Art. 35, and the Code of 1825, Art. 232.—Both under the Roman and the Spanish laws, the child given in adoption by a father, to any other person than a descendant, remained, nevertheless, under the power of the natural father; and did not pass under the private dominion of the adopter.

Cooper's Justinian Lib. I. Tit. XI, Sect. 2.

Febrero Adicionado, part I., Tom. 3.   Cap. XV. Sect. 1.

The Napoleon Code does not recognize the adoption of minors, Art. 346, but it has introduced, preparatory to an adoption, what is termed *une tutelle officieuse*, Arts. 345, 361, 368.   This *officious tutorship* does not, as a general rule, affect the power of the natural father over the person and property of the minor. Duranton Vol. 3, Tit VII, No. 339.

We therefore conclude that the testatrix was without power to name a tutor to the minor.

The evidence introduced, as an attempt to show the bad conduct of the opponent and his unfaithful administration, is wholly insufficient to exclude the opponent from the tutorship. ·

It is therefore ordered adjudged and decreed, that the judgment of the District Court be avoided and reversed.   It is further ordered, adjudged and decreed, that the application of *Saml. W. Dorsey* be rejected at his costs in both courts. And it is further ordered, adjudged and decreed, that the opponent, *William M. Wilson* be, and he is hereby confirmed in the natural tutorship of his minor child, *Ellen Wilson Upton*, and that letters of tutorship issue in his favor on his taking the oath required by law.