Ex parte Rosaura Ortiz et al., Petitioner and Appellees; Arturo Lluberas Rodríguez, Intervener and Appellant.

No. 5457. Argued November 26, 1930.—Decided May 29, 1931.

*López de Tord & Zayas Pizarro* for appellant. *Felipe Colón Díaz* for appellees.

Mr. Justice Wolf delivered the opinion of the Court.

Rosaura Ortiz and her seven sisters, duly represented by their mother, presented a petition to the District Court of

Ponce to be declared sole and universal heirs of Rosa Lluberas Rodríguez, without prejudice to the usufructuary share belonging to the widower Francisco Carreras.

The petitioners made their application on the ground that they were adopted children of the said Rosa Lluberas Rodríguez and that the latter at the time of her death did not belonging to the widower, Francisco Carreras.

The petition was presented on the 18th of September, 1930, and on the same day Arturo Lluberas Rodríguez appeared and presented a claim in opposition to those of the petitioners, setting up that he was the sole and universal heir of Rosa Lluberas Rodríguez in accordance with a holographic will made by her on the 22nd of May, 1925.

The adoption and the holographic will were duly proved at the trial and no matter of fact arises. The sole question presented to the decision of the district court and to ourselves is whether adopted children have the right to inherit like forced heirs or are in fact such forced heirs. It is practically the same proposition to decide whether in absence of the forced heirs previously mentioned by the code adopted children have a right to inherit even though the adopting parent makes a will constituting another person as her sole heir. The District Court of Ponce decided in favor of the adopted children. The court and the parties have principally discussed the bearing of sections 203 and 202 of the Civil Code in the order named, which are as follows:

"Section 203.—The person adopted shall enjoy in the family of the adopter the rights and duties and consideration of a legitimate child, with the exception noted in the preceding section.

"Section 202.—Adoption shall in no case injure the rights belonging to forced heirs, which shall remain as though the adoption had not taken place."

The court after stating who are ordinarily forced heirs under the code recited from section 186 of the Civil Code, which provides:

"Legitimate children have the right:

"1.—To bear the family name of the father and the mother.

"2.—To be supported.

"3.—To the legitimate inheritance."

The court then said: "As section 203 of the Revised Civil Code provides that an adopted child shall enjoy in the family of the adopter the same rights as a legitimate child, it is unquestionable that such adopted child has a right to inherit in the same way as a legitimate child would inherit." The court held that this conclusion was fortified by section 202, that the adoption should in no case affect the rights of forced heirs.

Attention was drawn to the provisions of the former Spanish Civil Code, which provides in section 177 as follows:

"The adopting parent acquires no right to inherit from the person adopted, nor does the latter acquire any right to inherit from the former otherwise than by will, unless the adopting parent shall have agreed in the deed of adoption to institute the person adopted as his heir. This obligation shall cease if the person adopted dies before the adopting parent.

"The person adopted retains all the rights belonging to him in his natural family with the exception of those relating to the parental authority."

The court held it was very significant that the said section 177 was not reproduced in the Puerto Rican Civil Code and deduced that it was the intention of the Legislature in enacting what it did, to consider for the purpose of inheritance adopted children as true legitimate children of the adopter, without prejudicing, of course, the rights of forced heirs. All of this should be considered in connection with the limitations to adoption.

We think the reasoning of the court was complete, but we shall indulge in some additional considerations in answer perhaps to the appellant. While the latter presented various assignments of error, it was only to attack the proposition set up by the court.

It may be said the principal argument of the appellant was that as the code declared who are forced heirs and did not include adopted children, that such exclusion militated against the conclusion that adopted children could in any case become forced heirs. Whether adopted children might be designated specifically as forced heirs or not, we agree with the court that they are given the same rights as legitimate children. In other words, it would make no difference whether they should be known as forced heirs or not. Great stress was laid on the fact that an adopted child according to section 203 only has rights in the family of the adopter. In any idea of universal succession, the word "family" might mean almost anything. It probably embodies the idea of such universal succession. Section 202 clarifies the matter by saying that the rights of adopted children should never interfere with the rights of forced heirs. As the legislator when referring to forced heirs in section 203 is treating rights of inheritance, it would be a necessary conclusion that for adopted children rights of inheritance exist unless there are such forced heirs. The rights to inherit only arise on the death of the ancestor. In the absence of other legitimate heirs adopted children inherit like legitimate children.

The appellant draws attention to the fact that prior to the adoption of section 177 of the Spanish Civil Code, and when adopted children had certain rights of inheritance, these rights would not prevail in the face of a testament made by the adopter, and a citation from Manresa is made to this effect. 2 Manresa, Commentaries on the Civil Code, 76. We have not verified the law existing before the adoption of the Spanish Civil Code, but we are satisfied that it can not interfere with the intention of the Legislature as expressed by sections 202 and 203 taken alone.

Appellant concedes that section 203 is new to our system. It excludes the idea that the Legislature only had in mind support, education, and the like.

While as we have said we think the reasoning of the court

disposes of the case, we should enter into some other considerations. Sections 202 and 203 do not stand alone. Sections 200 and 201 provide as follows:

"Section 200.—Any person may adopt another as his child.
"Section 201.—The adopter must be in the full exercise of his civil rights and be over thirty-seven years of age, and, moreover, be at least eighteen years older than the person adopted."

None of the parties apparently have discussed it, but what is the force of section 200 standing by itself? The use of the word "child" in its general, ordinary, and usual significance means that such child shall stand in the same relation to the adopter as a child ordinarily does to his parents. In a civil controversy especially, the word "adoption" carries with it that the person adopted has all the rights of an ordinary child. In Roman times an adopted child entered fully under the *patria potestas* of the person adopting.

*Vidal* v. *Commagere,* 13 La. Ann. 516, a much cited case, involved an act of the Legislature authorizing the adoption of an orphan child. In Louisiana, by the Code of 1808, adoption was abolished, (*In re Upton,* 16 La. Ann. 175), but was reinstated in 1865. At the time, therefore, of the decision in *Vidal* v. *Commagere, supra,* there was no existing law on the subject of adoption in Louisiana. The Court then had to construe what the legislature meant by using the word "adoption". The Court said: "If we take the most known and usual signification of the words 'to adopt', we find them to mean 'to take a stranger into one's family, as son and heir; to take one who is not a child and treat him as one, giving him a title to the privileges and rights of a child' ". Webster Dic., verb "adopt". The Court showed that adoption had so formerly been understood in Louisiana and that "the lawgiver ought not to be supposed ignorant of this state of things, or to use a term in a more restricted sense than it was formerly known to our laws; and it is a rule of interpretation, that laws on the same subject-matter may be considered, whether they be in force or repealed."

Adoption statutes were passed in various States of the United States. Previous laws referred to the distribution of the estate or other matters giving certain rights to the "issue" or "descendants" of a decedent. The courts have generally held that adopted children should then be considered as issue or descendants although it is clear that originally neither of these words could mean anything but offspring. *In re Newman,* 75 Cal. 213; *Batchelder* v. *Walworth,* 37 L.R.A. (N. S.) 849, cases and history; *Riley* v. *Day,* 44 L.R.A. (N.S.) 296; *Ross* v. *Ross,* 129 Mass. 243; *In re Hebb's Estate,* 134 Wash. 424; 1 R. C. L. 619; 11 C. J. 752; 1 C. J. 1398, § 128. All these authorities bear on the main proposition. Similarly, in Puerto Rico where the statute gives a right of adoption, it is no great stretch to say that the Legislature meant that the person so adopted should fall within the definition of forced heir. Subject to restriction the status of a legitimate child is conferred.

As we have said, section 200 gives rights by itself and the subsequent sections only place certain limitations on such rights, which include under section 186 the right to inherit. We consider that an adoption statute should be construed liberally in favor of an adopted child, as has been done in other jurisdictions. *Bilderback* v. *Clark,* 9 A. L. R. 1622; *In re Hebb's Estate,* 134 Wash. 424, 427; 1 R.C.L. 595.

The judgment appealed from will be affirmed.